IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRAY & GILLESPIE MANAGEMENT,
LLC, et al,

      Plaintiffs,

-vs-                                          Case No.:  6:07-cv-222-Orl-19KRS

LEXINGTON INSURANCE COMPANY, a
Delaware Corporation, BELFOR USA
GROUP, INC., a Colorado Corporation,
BUILDING CONSULTING ASSOCIATES,
INC., an Illinois Corporation, and
VERICLAIM, INC., a Delaware Corporation,

      Defendants.
_____/

**ORDER AND RECCOMMENDATIONS OF SPECIAL MASTER AS TO
MOTION FOR PROTECTIVE ORDER TO PREVENT DEPOSITION OF AND
<u>DOCUMENT PRODUCTION FROM HAROLD LUEKEN</u>**

      On August 7, 2008, Defendants, Belfor USA Group, Inc. ("Belfor") caused a Subpoena Duces Tecum to be issued and served upon a Mr. Harold Lueken of New York. The Subpoena summoned him to appear for a deposition on September 12, 2008, in New York City and, if in his custody, control, or possession, to bring with him certain described documents. Co-Defendant, Lexington Insurance Company ("Lexington") joined in that subpoena.

      On August 21, 2008, Plaintiff(s) Bray & Gillespie LLC, *et al* (collectively, "B&G") filed the subject, "Motion for Protective Order to Prevent the Deposition of and Document Production of Harold Lueken" which has been referred to the Special Master for resolution. Lexington filed its "Memorandum In Opposition etc." on September 4, 2008, and Belfor filed its "Memorandum in Opposition etc" on September 8, 2008.

      More specifically, B&G has moved for a Protective Order:

    a) completely preventing the deposition of, and document production from, Mr. Lueken on the grounds that the discovery sought is irrelevant and privileged, or alternatively,

    b) limiting the scope of the deposition of, and document production from, Mr. Lueken on the same grounds.

As more specifically set forth below, it is the Special Master's Order and Recommendation that the Motion be GRANTED in part and DENIED in part.

**Background**

According to evidence submitted by B&G in the form of two deposition transcripts of Mr. Lueken's sworn testimony in another case[1], Mr. Lueken is a lawyer admitted to the New York bar who was hired by B&G to serve as their in-house counsel in March of 2006 and began service in that respect in April of 2006. (April Transcript pp 19-20) According to Mr. Lueken, he continued to serve B&G as their in-house counsel until September of 2006 when his replacement was hired (*id* at p. 20). After his six month term as B&G's general counsel ended in September 2006, Mr. Lueken went on to serve the company as its Executive Vice President and, later, as its Chief Operating Officer. (*id,* at p. 21). Mr. Lueken continued employment in that capacity until he left the company in March of 2008. From September of 2006 until March of 2008, Mr. Lueken's duties included dealing with such things as B&G's equity investors, its political relationships, charitable fundraising programs, executive recruiting, and certain corporate banquets. (*id,* at pp. 30-32). Mr. Lueken seemed quite certain that after September 2006 he was no longer giving B&G legal advice (*id,* at p. 22), no longer serving as the company's general counsel, and was not "acting as a lawyer" (*id,* at p. 21).

Mr. Lueken's employment with B&G ended in March of 2008 when he was "let go" or "fired" (May Transcript p.16). The circumstances of his termination by B&G apparently resulted in actual and threatened lawsuits being initiated between the two (*id,* at p. 14-16). According to Mr. Lueken, his planned lawsuit against B&G would have involved "contractual or other claims" he had for compensation owed by B&G arising out of B&G's "insurance claims" against various insurance carriers (including Lexington, a named defendant in this action) for hurricane storm damage incurred in 2004 and 2005 (*id,* at p. 17). More specifically, Mr. Lueken claims to have a signed an agreement from B&G promising him 0.9% of the gross proceeds received from, "all insurance claims relating to storms on properties currently owned that occurred as a result of storms of 2004 and (200)5" (*id,* at p. 85). Mr. Lueken also apparently took "serious issue" with certain "business practices" of B&G. (April Transcript, at p. 46).

---

[1] *Bray & Gillespie IX, LLC, vs. The Hartford Fire Insurance Company, et al.* USDC Case No. 6:07-CV-326-ORL-31KRS, USDC, M. D of Fla., Video Tape Deposition of Harold Lueken April 8, 2008; Continued Video Tape Deposition of Harold Lueken, May 30, 2008, hereinafter, "April Transcript" and "May Transcript" respectively.

In his testimony, Mr. Lueken stated he did not think his claims against B&G were relevant to the insurance issues raised in B&G's claims against Hartford (May Transcript pp. 18-19).

Against this background B&G has moved for the Protective Order described above.

**B&G's Motion for Protective Order To Completely Prevent The Taking of Harold Lueken's Deposition and Production of Documents on Grounds of Privilege and Relevance.**

It is the Recommendation and Order of the Special Master that this aspect of the B&G's Motion for Protective Order be DENIED.

Mr. Lueken's term as B&G's general counsel was, by Mr. Lueken's own testimony, for a period of six months – April 2006 to September 2006. After that period, Mr. Lueken specifically testified he served as B&G's Executive Vice President and Chief Operating officer and not as their lawyer. This is hardly a basis for blocking any and all testimony or document production from Mr. Lueken on the basis of privilege.

As noted by B&G in their supporting memorandum, "For communications to in-house counsel to be protected by the attorney-client privilege, that lawyer must function as a lawyer and the advice given must be predominately legal in nature". *Plaintiff's Motion for Protective Order To Prevent the Deposition of and Document Production From Harold Lueken,* at p. 10 (citations omitted). Here, Mr. Lueken flatly denies serving as a lawyer for B&G or giving any legal advice to B&G after September 2006. The only information submitted in opposition to that testimony comes from Mr. Joseph Gillespie, a B&G principal who, when asked, "At the time (Mr. Lueken) left the company (March of 2008) was his title Chief Operating Officer?" answered, "That is the subject of some debate. Like I said, my involvement with (Mr. Lueken) was on specific issues, you know, pretty much legal in nature, political. He did a lot of that stuff." When contrasted with the testimony of Mr. Lueken himself, this nonspecific, undated reference to Mr. Lueken's input does not establish that his contributions to the company after September 2006 were "predominately legal in nature".

It is entirely possible that many transactions involving Mr. Lueken (as well as documents generated by, or to, Mr. Lueken) during his term a B&G's general counsel (April 2006 to September 2006) might be subject to a claim of privilege by B&G. It is reasonable to assume the work of in-house counsel could involve providing the company with legal advice which, in turn, could create privileged communications. While everything that passes over an in-house lawyer's desk does not necessarily generate or warrant a cloak of privilege, a substantial portion of communications generated to and from in-house lawyers might well be subject their to client's claim of privilege. As noted below, special precautions should therefore be taken to protect B&G's rights to claim privilege for transactions or communications to and from Mr. Lueken occurring in this time frame.

On the other hand, whatever presumption of privilege might exist for the majority of transactions and communications involving Mr. Lueken that occurred from April to September of 2006 is seriously compromised after that time span. From September 2006 until his departure from the company in March of 2008 Mr. Lueken, by his own testimony, was not acting as general counsel for the company and not otherwise serving to provide legal advice. During this period of time it appears clear Mr. Lueken was almost exclusively involved with routine business activities for B&G. No blanket objection of privilege based upon Mr. Lueken giving legal advice to B&G would be appropriate for all transactions or communications occurring during this phase of his work with the company.[2]

Finally, it should be noted that even when Mr. Lueken was arguably in a position to provide B&G with legal advice, there is a complete absence of proof that Mr. Lueken ever had any legal involvement in framing this action, defining the trial strategy B&G might employ in this action, or in any other manner serving as B&G's <u>trial counsel</u> in this action. Substantially all of the case law cited by B&G for the proposition that <u>any</u> deposition of a party's legal counsel should be regarded with extreme caution falls into the category of cases in which testimony is being sought from trial counsel in the pending action. That is simply not the case here.

There is no basis for granting a blanket Protective Order precluding any testimony from Harold Lueken in this case because of legal privilege.

Similarly, there has been no showing that a valid basis exists to preclude any and all testimony or production from Mr. Lueken on the basis that anything he has to say lacks relevance to the issues presented in this case. The sole argument provided in support of that notion is testimony from Mr. Lueken stating that, in his opinion, his post employment claims against the company were not relevant to the issues presented in the suit by B&G against the Hartford Insurance Co.

In the first instance, Mr. Lueken's observations on the relevance of his claims were, as noted, made in reference to claims presented in another case entirely; the Hartford Insurance Co. lawsuit, not this action. In any event, and with all due respect to the witness, Mr. Lueken is not necessarily the judge of what is relevant to the issues presented in this proceeding. Something more than his opinion would be required to establish the lack of relevance for anything he has to say.

On the other hand, Mr. Lueken did testify that his post employment claims against the company involved, among other things, money allegedly owed to him as a result of a contingent percentage interest he had in the proceeds of any settlement or recovery from B&G's property insurance carriers resulting from B&G's 2004-2005 storm damage claims. Mr. Lueken specifically identified Lexington Insurance Company, a party in this

---

[2] This is not to say that a privilege would not attach to communications or transactions involving Mr. Lueken and any outside or in-house lawyers serving B&G during the September 2006 to March 2008 timeframe. Any privilege attaching to those communications, however, would stem from the outside or in-house lawyer's position as a legal advisor, not Mr. Lueken's.

action, as one of those carriers. This case, in general terms, involves claimed irregularities on both sides involving the filing, adjustment, payment, and use of funds derived from those same property damage claims filed with Lexington. On its face therefore, Mr. Lueken's disputes with the B&G on how the proceeds of any recovery of those claims were obtained and how they would be disbursed would seem relevant to the issues in this case.

In any event, there has been no showing of any basis to believe a blanket Protective Order would be appropriate on the grounds that *anything* Mr. Lueken might have to say would be irrelevant to the issues in this proceeding.

### B&G's Alternative Motion for Protective Order Partially Limiting the Deposition and Document Production of Harold Lueken.

It is the Recommendation and Order of the Special Master that this aspect of the Motion for Protective Order by B&G be DENIED in part and GRANTED in part as set forth below.

It would appear B&G has specifically asked for a Protective Order precluding any requirement by Mr. Lueken to produce any documents (or proffer any testimony) as to the matters described in paragraphs 1, 2, 6, 7 and 8 of Exhibit A to Belfor's Subpoena Duces Tecum to Mr. Lueken. All these requested documents deal with allegations made by Mr. Lueken in his counter-claims asserted against B&G after his departure in March of 2008.

To the extent Mr. Lueken actually has possession, custody or control of documents involving transactions or communications falling within the description of the matters described in Requests #1, 2, 6, 7 or 8 that originated or occurred during his tenure as in-house counsel from April 2006 to September 2006, he is requested to provide copies of those documents to B&G in advance of presenting them to counsel for Defendants. Pursuant to the procedure agreed to by the parties and the Court on April 22, 2008, B&G shall thereafter examine those documents and determine which, if any, it would claim as privileged. Any documents claimed to be privileged shall be entered into the privilege log immediately. Those not claimed to be privileged shall be produced at the deposition of Mr. Lueken as requested. To this extent, therefore, it is the Recommendation and Order of the Special Master that B&G's Motion for Limited Protective Order be GRANTED.[3]

To the extent that Mr. Lueken actually has possession, custody or control of documents involving transactions or communications falling within the description of the matters described in Requests #1, 2, 6, 7 or 8 that originated or occurred during his tenure

---

[3] I have been advised Mr. Lueken has recently notified counsel that he actually has a total of three documents in his possession and control originating from his tenure with B&G. These documents have apparently been reviewed by counsel for B&G and determined not to be privileged. They will be produced at Mr. Lueken's deposition on September 12, 2008. It would thus appear the question of what Mr. Lueken will produce has been partially answered by what he actually has in his possession and control to produce.

as Executive Vice President or Chief Operating Officer of B&G from September 2006 to March 2008 and that also directly involve or include any outside or in-house attorney hired to represent the interests of B&G, he is requested to provide copies of those documents to B&G in advance of presenting them to counsel for Defendants. Pursuant to the procedure agreed to by the parties and the Court on April 22, 2008, B&G shall thereafter examine those documents and determine which, if any, it would claim as privileged. Any documents claimed to be privileged shall be entered into the privilege log immediately. Those not claimed to be privileged shall be produced at the deposition of Mr. Lueken as requested. To this extent, therefore, it is the Recommendation and Order of the Special Master that B&G's Motion for Limited Protective Order be GRANTED.

The Subpoena Duces Tecum served by Belfor on Mr. Lueken included, as "Exhibit A", a list of the documents sought to be provided along with a lengthy set of "Instructions" on the manner and means in which they were to be provided. Paragraphs (3) and (4) of those "Instructions" set forth a list of demands describing what Mr. Lueken was to do in the event he desired to claim any document requested was privileged in whole or in part. Paragraph 5 of the "Instructions" to Mr. Lueken set forth a list of questions he was to answer in the event any document requested formally in his care, custody or control, had been destroyed or lost. All three of these paragraphs are inappropriate for inclusion in the service of a Subpoena Duces Tecum on an independent witness.

Any "privilege" to be claimed to protect documents held by Mr. Lueken would and should be claimed by B&G, not Mr. Lueken. B&G owns the privilege, not Mr. Lueken. Since Mr. Lueken is not in a position to assert the privilege in the first instance, he should not be required to elaborate on his grounds for doing so. The list of questions in paragraph 5 of the "Instructions" might be appropriate for deposition inquiry in the event it is disclosed that some documents answering the description of those sought were, in fact, lost or destroyed while in Mr. Lueken's possession. They are interrogatories, however, that are not appropriate for inclusion in a list describing requested documents accompanying a Subpoena Duces Tecum. Accordingly, it is the Recommendation and Order of the Special Master that a Protective Order precluding Mr. Lueken's compliance with paragraphs 3, 4 and 5 of the Instructions attached to his Subpoena Duces Tecum be GRANTED.

B&G has also moved for the entry of a Protective Order limiting inquiry and production of Mr. Lueken to his involvement in the insurance claims directly involved in this case (i.e., Lexington claims). Again, it is argued that the concept of privilege and relevance justify this restriction.

There has been no showing that Mr. Lueken's input to filing other property insurance damage claims arising out of the 2004 and 2005 storms in any way involved his giving B&G legal advice. To the contrary, Mr. Lueken expressly stated he hired lawyers specifically to provide B&G legal assistance in filing those claims because he didn't know anything about insurance issues. While a privilege may attach to

communications to and from those lawyers concerning those claims, there has been no basis shown for a privilege attaching to those transactions or communications as a result of Mr. Lueken's status as legal counsel to B&G. For the reasons set forth above, inquiry into Mr. Lueken's involvement in process of filing 2004 and 2005 storm damage claims against other insurance carriers may lead to admissible evidence in this case. As such, that is a relevant area of inquiry. Accordingly, it is the Recommendation and Order of the Special Master that all other aspects of B&G's Alternative Motion for Protective Order Limiting the Deposition or Production of Documents by Harold Lueken, not specifically granted above, be DENIED.

Done and Ordered this 10th day of September, 2008.

/s/ Lawrence M. Watson, Jr.
Lawrence M. Watson, Jr.
Special Master

On September 10, 2008, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel:

Michael A. Shafir, Esquire
Steven J. Brodie, Esquire
Carlton Fields, PA
4000 International Place
100 SE 2nd Street
Miami, FL 331331

Daniel Cramer Brown, Esquire
Carlton Fields, PA
215 S. Monroe Street
Suite 500
Tallahassee, FL 32301

Carl D. Motes, Esquire
Arnold, Matheny & Eagan, PA
605 E. Robinson Street
Suite 730
Orlando, FL 32802

Amelia W. Koch, Esquire
Kent A. Lambert, Esquire
Roy C. Cheatwood, Esquire
Steven F. Griffith, Jr., Esquire
Baker Donelson, Bearman, Caldwell & Berkowitz
201 St. Charles Avenue, Suite 3600
New Orleans. LA 70170

Marvin P. Pastel, II, Esquire
Weinstock & Scavo, PC
Suite 300
3405 Piedmont Road, NE
Atlanta, GA 30305

Eric E. Caugh, Esquire
Lindsey A. Davis, Esquire
Zelle, Hofmann, Voelbel, Nason & Gette, LLP
Suite 4000
500 Washington Ave., S
Minneapolis, MN 55415

John N. Ellison, Esquire
John B. Berringer, Esquire
Jeremy Hennickel, Esquire
Douglas Widin, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

Drew Williams, Esquire
Kinsey Vincent Pyle
150 S Palmetto Ave, Suite 300
Daytona Beach, FL  32114

Bruce DelValle, Esquire
DelValle Law Group
Post Office Box 265007
Daytona Beach, FL  32126-5007