# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRAY & GILLESPIE MANAGEMENT LLC, BRAY & GILLESPIE, DELAWARE I, L.P., BRAY & GILLESPIE X, LLC, et al.**
        **Plaintiffs,**

**-vs-**                                        **Case No. 6:07-cv-222-Orl-98KRS**

**LEXINGTON INSURANCE COMPANY, BELFOR USA GROUP, INC., BUILDING CONSULTING ASSOCIATES, INC., VERICLAIM, INC.**
        **Defendants.**
_____/

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT BELFOR USA GROUP, INC.'S MOTION FOR CONTEMPT, SANCTIONS, AND AWARD OF COSTS, EXPENSES, AND ATTORNEYS' FEES AGAINST OCEAN WATERS INVESTMENTS, LLC (Doc. No. 261)** |
| **FILED:** | **July 18, 2008** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I. INTRODUCTION.

Defendant Belfor USA Group, Inc. ("Belfor") moves for sanctions against non-party Ocean Waters Investments, LLC, formerly Ocean Waters Development, LLC (hereinafter referred to as

"LLC")[1] for alleged failures to comply with Belfor's subpoena *duces tecum* and this Court's order compelling compliance with that subpoena, Doc. No. 250, and making other "misstatements and material omissions to the Court," revealed during a deposition pursuant to Fed. R. Civ. P. 30(b)(6). The motion asks that the Court hold LLC in civil contempt of court pursuant to Fed. R. Civ. P. 45(e), sanction LLC and/or its counsel "bad faith and vexatious conduct" pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority, and such other relief as is warranted. Doc. No. 261, at 2.

LLC filed a response to the motion. Doc. No. 268. Belfor filed a reply with permission of the Court. Doc. No. 319. The litigants filed evidence in support of their respective positions. After a review of all of these documents, and being otherwise familiar with the record as a whole, I conclude that the matter is now ripe for review.

## II. PROCEDURAL HISTORY.

In November 2007, Belfor served written discovery requests on the Bray & Gillespie companies named as plaintiffs in this case (hereinafter collectively "B&G"). Counsel for Belfor represents that B&G's counsel "indicated that documents potentially responsive to [Belfor's written discovery requests] were within the possession, control, or custody of a third party entity, Ocean Waters Investments, LLC, and would not be produced without a subpoena." Doc. No. 261 at 2. Accordingly, on December 20, 2007, Belfor served LLC a subpoena calling for production of

---

[1] As I explain *infra*, the corporate entity Ocean Waters Investments, LLC, formerly known as Ocean Waters Development, LLC, is distinct from Plaintiffs and their affiliated companies that used the trade name "Ocean Waters" or its variants. Because of the significant confusion surrounding use of "Ocean Waters" underlying the present motion, I will refer to the corporate entity that is the subject of Belfor's nonparty subpoena as LLC.

documents on January 18, 2008. Doc. No. 261-6 at 2. The subpoena sought, among other things, the articles of incorporation of LLC. *Id.*

Thereafter, counsel for Belfor spoke with William Pillsbury, who was then an attorney for B&G and LLC, regarding the subpoena. Belfor represents that Pillsbury then changed course regarding production of documents from LLC, and disputed whether a subpoena to LLC was proper because it was an affiliate of the B&G companies who were plaintiffs in the case. Doc. No. 261-4. An agreement was reached that Belfor would not require LLC to reproduce documents included in the discovery produced by B&G, but expected production of all documents responsive to the subpoena that were not being produced by B&G. *Id.*

On January 22, 2008, Pillsbury indicated in a email to Belfor's counsel that he was "getting corporate documents related to Ocean Waters Investment[s] that would not be part of the general production by Plaintiffs." Doc. No. 261-7 at 2. Despite Belfor's repeated requests for production of these documents, LLC had not produced them as of March 18, 2008, the date of a discovery conference before me. Doc. No. 261-10.

Counsel for Belfor raised the issue of LLC's failure to produce documents pursuant to the subpoena at the conference. Doc. No. 261-10 at 18-19.[2] I inquired about the company that was the subject of the subpoena. *Id.* at 39. Pillsbury advised that LLC was a separate corporation formed to perform general management of all of the properties at issue in the insurance dispute in the present case. *Id.* at 40. Because B&G proposed to produce documents responsive to discovery requests

---

[2] Throughout this order, I will use the original pagination of transcripts of court hearings and depositions, rather than the page numbers assigned when the transcripts were electronically filed.

directed to B&G and LLC in an ongoing, rolling production, I directed LLC to identify documents produced that originated from LLC. *Id.* at 41-42.

LLC served its response and objections to the subpoena on May 9, 2008. Doc. No. 261-11. Among other things, LLC objected to producing its articles of incorporation, even though Pillsbury had earlier indicated that they would be produced. *Id.* at 4.

On June 6, 2008, Belfor filed a motion to compel LLC to produce the documents described in the subpoena. Doc. No. 215. In its response to the motion, which was filed on June 20, 2008, LLC argued that its documents were commingled with B&G's documents, and thus could not be separately identified. However, John Ellison, another attorney for B&G and LLC, wrote as follows: "To the extent [LLC] is able to locate unique 'corporate documents' that are relevant to this case, [LLC] will produce these documents." Doc. No. 235. I subsequently granted the motion to compel and permitted Belfor to conduct depositions of LLC's representatives to discover how LLC maintained its business records, both in paper and electronic form. I further ordered LLC to identify all documents previously produced that were responsive to the subpoena to LLC and to produce all responsive documents not previously produced at the deposition. Doc. No. 250.

The depositions of LLC's corporate representatives were conducted on July 10, 2008. On July 9, 2008, LLC finally produced 26 documents, including its articles of incorporation. LLC's corporate representatives testified that they first began the search for documents responsive to the subpoena, including the articles of incorporation, shortly before the depositions took place. Mosebach Dep., Doc. No. 261-16, at 7; Carlock Dep., Doc. No. 261-14, at 31; Alford Dep., Doc. No. 261-17, at 6.

The documents finally produced by LLC reflect that Bray & Gillespie, Inc. used "Ocean Waters Development" as its d/b/a as of August 2004. Doc. No. 268-5. The articles of incorporation show that Ocean Waters Development, LLC was first formed in March 2005, and its name was changed on August 4, 2006, to Ocean Waters Investments, LLC. Doc. No. 268-3. The testimony of the LLC's corporate representatives established that B&G and its affiliated companies continued to use "Ocean Waters" and variants thereof as trade names even after LLC was formed. Many people, including Attorney Pillsbury, had no clear understanding of the distinction between LLC and entities operating under an "Ocean Waters" trade name. *See, e.g.,* Pillsbury Aff., Doc. No. 268-7 ¶ 4; Hricko Dep., Doc. No. 261-13, at 8; Mosebach Dep. at 5, 12.

The corporate representatives testified that LLC was formed to manage planned future developments. Hricko Dep. at 8. Although Belfor found many documents in B&G's document production that contain the words "Ocean Waters Investments," or "Ocean Waters Development," Young Aff., Doc. No. 319-3 ¶¶ 7-9, there is no evidence that LLC had any role with respect to the matters at issue in the present litigation. *See, e.g.,* Mosebach Dep. at16- 22 (no reference to Ocean Waters Investments in the correspondence contained in files relating to damages from the 2004 hurricanes). Nevertheless, Belfor contends that because an adequate search for responsive documents has not been done, *see* Doc. No. 261 at 12-17, LLC has still not complied with the subpoena or my order to produce documents responsive to the subpoena.[3]

---

[3] Belfor has raised several concerns about the production of data or records otherwise unrelated to LLC, including records concerning d/b/a entities using "Ocean Waters" or similar names. *See, e.g.*, Doc. Nos. 261, at 12-17, ¶¶ 3-12, 16-17, 19-22, 25-27; 319, ¶¶ 3-6. Because the instant motion seeks sanctions against LLC for its purported violations and not to compel discovery from B&G, I decline to address those concerns in the present order.

### III. ANALYSIS.

**'Who are *you*?' said the Caterpillar.**

**This was not an encouraging opening for a conversation. Alice replied, rather shyly, 'I – I hardly know, sir, just at present – at least I know who I *was* when I got up this morning, but I think I must have been changed several times since then.'**

**'What do you mean by that?' said the Caterpillar sternly. 'Explain yourself!'**

**'I can't explain *myself*, I'm afraid, sir' said Alice, 'because I'm not myself, you see.'**

**'I don't see,' said the Caterpillar.**

**'I'm afraid I can't put it more clearly,' Alice replied very politely, 'for I can't understand it myself to begin with . . . .'**

LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND 56 (Charles A. McMurtry, ed., MacMillan 1914).

Like the Caterpillar, Belfor has simply been trying to obtain, through documents and testimony, a straight answer to a straight-forward question – what is LLC and what role, if any, did it have in the events underlying the present litigation? In a very good impersonation of Alice, LLC and its counsel demonstrated, until very recently, that they had no idea.

Belfor now seeks imposition of sanctions against LLC and its attorneys for failing timely to search for and produce documents responsive to the subpoena and my order. I will address each of the alternative basis for sanctions in turn.

    *A.    Civil Contempt Pursuant to Rule 45(e).*

There are two types of contempt, civil and criminal. Civil contempt is a process used by a Court to compel compliance with a subpoena or court order. Criminal contempt is penal in nature

and requires compliance with the protections that the Constitution requires in criminal proceedings. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27 (1994). "A contempt fine . . . is considered civil and remedial if it either 'coerce[s] the [contemnor] into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Id.* (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947)).

> In a civil contempt proceeding, the petitioning party bears the burden of establishing by "clear and convincing" proof that the underlying order was violated. However, once the moving party makes a prima facie showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a "present inability to comply that goes 'beyond a mere assertion of inability....'" Therefore, the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue. Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance.

*Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990)(internal citations omitted).

In response to the motion to compel LLC to produce documents pursuant to the subpoena, I ordered LLC to produce responsive documents at the Rule 30(b)(6) depositions conducted by Belfor to inquire into LLC's recordkeeping system. The evidence submitted establishes that LLC complied with my order by producing LLC's corporate information and other documents responsive to the subpoena the day before the depositions.

Belfor has not established by clear and convincing proof that LLC has additional documents responsive to the subpoena and my order that it has not produced. Accordingly, a finding that LLC is in civil contempt is not warranted.

Furthermore, I am persuaded that additional adventures in this rabbit-hole seeking to obtain information from LLC is not warranted. However, because B&G used the name "Ocean Waters" and its variants indiscriminately, including as a d/b/a of at least one corporate entity, Bray & Gillespie, Inc., B&G should not rely on the existence of different B&G corporate entities, some of which may not be parties to this case, to withhold documents and other information responsive to Defendants' discovery requests.

> B.  *Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power.*

Section 1927 provides that litigants and their counsel who multiply "the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002). Because section 1927 is penal, courts must strictly construe its provisions. *Id.* The statute outlines three requirements necessary to justify the imposition of sanctions: 1) unreasonable and vexatious conduct; 2) that "multiplies the proceedings;" and 3) sanctions that do not exceed the costs incurred due to the objectionable conduct. *Id.* (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001)).

Section 1927's purpose is to deter frivolous litigation and abusive or dilatory practices by litigants. It also ensures that those who create unnecessary costs bear them. *O'Rear v. Am. Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D. Fla. 1992). The Court's "power to impose sanctions under Section 1927 should be exercised 'only in instances of a serious and studied disregard for the orderly processes of justice.'" *Jerelds*, 194 F. Supp. 2d at 1312 (quoting *Cruz v. Savage*, 896 F.2d 626, 631-32 (1st Cir. 1990)). In *Amlong & Amlong v. Denny's, Inc.*, 500

F.3d 1230, 1241 (11th Cir. 2007), the Eleventh Circuit held that "sanctions under § 1927 are measured against objective standards of conduct."

Courts also have the inherent power to sanction parties, lawyers, or both for engaging in conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). The court may tax attorneys' fees and costs "when [the client, attorney or both] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), or otherwise failed to comply with court orders or the Federal Rules of Civil Procedure, *Zocaras v. Castro*, 465 F.3d 479, 490 (11th Cir. 2006).

The court's inherent power to sanction also includes sanctioning non-parties for bad faith conduct. *See generally Chambers*, 501 U.S. at 41; *see also Helmac Prods. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563 (E.D. Mich. 1993)(citing *Chambers* as authority to sanction non-parties).

In this case, LLC appeared through counsel and was subject to my June 30, 2008 order. The evidence before the Court does not establish that LLC intentionally or recklessly failed to respond to the subpoena as there is no evidence that LLC was made aware of that subpoena by its attorneys. Further, the evidence shows that LLC complied with my June 30, 2008 order by producing responsive corporate documents. Accordingly, no basis has been established to sanction LLC.

The evidence shows that the failure to respond to the subpoena lies squarely with counsel for LLC, who were also counsel for the B&G Plaintiffs. Attorney Pillsbury, formerly counsel for B&G and LLC, caused many of the problems by (1) failing to gain a full understanding of his

-9-

clients' corporate structure, and (2) making conflicting representations to Defendants' counsel regarding what LLC would produce and when. Current counsel for LLC, including its in-house counsel, did little to remedy the problem until required to do so by my June 30, 2008, order.

In *Amlong & Amlong v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007), the Eleventh Circuit held that "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions – the attorney must . . . needlessly obstruct the litigation of a non-frivolous claim." To evaluate such conduct, "court[s] must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable according to some objective standard." *Id.* at 1260. "[N]egligent conduct, standing alone, will not support a finding of bath faith under § 1927 – that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standing of conduct expected from a reasonable attorney." *Id.* at 1241, 1242.

There is no doubt that counsel for LLC needlessly obstructed the litigation by failing to produce responsive corporate documents within the time required by the subpoena. As the evidence shows, the documents were readily available and produced within a week after Mosebach was tasked with finding them.

Furthermore, I find that a reasonable attorney would have forwarded the subpoena to his client and requested the search for responsive documents at the time the subpoena was served. As noted above, this never happened.

The record is insufficient, however, to establish that any individual attorney's conduct is sanctionable. Attorney Pillsbury certainly complicated the litigation by failing to learn about the

interrelationship among the various B&G entities, including LLC, and failing to cause a search to be conducted for the LLC corporate documents that he agreed would be produced.  The less-than-amicable departure of current counsel for B&G from Anderson, Kill & Olick to join Reed Smith further exacerbated the problem because they were not fully informed of Attorney Pillsbury's representations regarding LLC, resulting in the filing of untimely objections to the subpoena even though Attorney Pillsbury had agreed to produce the responsive corporate documents.   While reasonable attorneys, acting in a professional manner, should have been able to make the transition between law firms more seamless, I do not find that the action of any attorney rose to the level of intentional or reckless misconduct subject to sanctions.

**DONE** and **ORDERED** in Orlando, Florida on September 22, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE