IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRAY & GILLESPIE MANAGEMENT,
LLC, et al,

    Plaintiffs,

-vs-                                            Case No.: 6:07-cv-222-Orl-19KRS

LEXINGTON INSURANCE COMPANY, a
Delaware Corporation, BELFOR USA
GROUP, INC., a Colorado Corporation,
BUILDING CONSULTING ASSOCIATES,
INC., an Illinois Corporation, and
VERICLAIM, INC., a Delaware Corporation,

    Defendants.
_____/

## ORDER AND RECCOMMENDATIONS OF SPECIAL MASTER ON PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM VERICLAIM, INC.

      On August 15, 2008, Plaintiff's, Bray & Gillespie Management, LLC et al (""B&G") filed its *Plaintiff's Motion to Compel Production of Documents from Vericlaim, Inc.,*("Motion"). On August 29, 2008, the Motion was responded to by Defendant VeriClaim, Inc. ("VeriClaim") with its *VeriClaim, Inc.'s Memorandum of Law In Opposition To Plaintiff's Motion to Compel Production from VeriClaim,*. Co-Defendant Lexington, Insurance Company ("Lexington") joined in VeriClaim's response on September 5, 2008.

      Although styled a, "Motion to Compel Production" , B&G's Motion variously asks the Court to, "review the privilege log and privilege claims made by VeriClaim, Inc. and require VeriClaim to further supplement its privilege log" *Plaintiff's Motion to Compel Production of Documents from Vericlaim, Inc.* p.1; and to order a, "more complete explanation of the basis for the privileges VeriClaim has claimed" by "compelling production of a supplemental privilege log that provides sufficient information to support the privileges claimed" *id,* p.3-4. In addition, B&G has asked the Court to compel production of "all non-privileged documents listed on its privilege log".

*Id,* p.1. [1] For the reasons set forth below, it is the Recommendation and Order of the Special Master that the Motion be GRANTED in part and DENIED in part.

This case involves alleged irregularities by Lexington, VeriClaim, and others in processing and administering storm damage insurance claims filed by B&G following Hurricanes Charlie, Frances and Jeanne. All three hurricanes struck Daytona Beach, Florida in the late summer and early fall of 2004. Lexington had issued a Commercial Property Insurance Policy to B&G covering several hotel properties it owned which were located in the Daytona Beach area. The Policy issued by Lexington carried various "per occurrence" limits for various kinds of losses, including a $25,000,000 per occurrence property damage limit. Among other things, B&G is claiming each of the three storms constitutes a separate occurrence and that its various properties sustained independent, separate and distinct property damages as result of each storm which each meet or exceed the $25,000,000 per occurrence limit in the policy. Accordingly, B&G contends it is entitled to recover a total of $75,000,000 as the full "per occurrence" limit for all three storms. While Lexington has paid some of the benefits due under the policy, B&G charges it has not paid all it should have paid. More specifically, B&G asserts that Lexington has not paid the full $25,000,000 in benefits due for the property damage caused by Hurricane Jeanne, the last of the three storms. Based upon its examination and adjustment of the Proof of Loss filed by B&G dealing with Hurricane Jeanne, however, Lexington asserts that B&G, "failed to properly and adequately differentiate the alleged damages purportedly caused by Hurricane Jeanne from damages caused by Hurricane Charley and Hurricane Francis" and is thus not entitled to any additional insurance proceeds. . *VeriClaim Inc.'s Objections and Answers to Plaintiff's First Set of Interrogatories,* pp. 9-10

VeriClaim was hired by Lexington to adjust the property damage loss incurred by B&G as a result of all three storms. VeriClaim served as Lexington's "on site 'clerk of the works'" developing the scope of damage at each property; monitoring the work by, and processing payments to, the remediation contractors and vendors, and generally supporting Lexington in its evaluation and response to the B&G claims for insurance benefits. *Id.* p. 4-5. Their duties would logically include a review and investigation of the Proof of Loss documents submitted by B&G for each of its claims.

In the normal course of this action, B&G requested production of a wide range of documents from VeriClaim, including its adjustment claim files. VeriClaim responded by producing some documents and objecting to the production of others based, in part, on "attorney client privilege, work-product doctrine, the joint defense and common-interest privilege and the protection afforded to consulting experts". *See generally, VeriClaim Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Production of*

---

[1] B&G's Motion to Compel appears to have been focused on documents identified on a Privilege Log submitted by VeriClaim on June 11, 2008. According to VeriClaim, that Privilege Log was revised, and a new, updated version was served on B&G contemporaneously with VeriClaim's Memorandum in Opposition to the subject B&G Motion to Compel. *VeriClaim, Inc.'s Memorandum of Law In Opposition To Plaintiff's Motion to Compel Production from VeriClaim,* p. 1, Footnote 1. It will be assumed B&G's Motion seeks the same relief as to the Revised Privilege Log

*Documents,* p.5. Ultimately, VeriClaim also filed a thirty page "Revised Privilege Log" pursuant to F.R.P.C. Rule 26(b)(5)(A). B&G's present Motion is directed toward certain of the rights to privilege raised in that log.

The most significant point of contention raised in B&G's Motion is the appropriateness of VeriClaim and Lexington's claim of privilege from producing a series of documents consisting of communications by and between Lexington's lawyers and certain agents and employees of VeriClaim and others who also participated in adjusting the B&G loss claims. VeriClaim and Lexington assert that these individuals were hired as, "consultants" or, "consulting experts" in connection with the filing of the instant litigation by B&G and, as such, are protected by the "attorney work product doctrine". B&G, on the other hand, contends that, "Lexington's attempt to name these individuals as experts or consultants and VeriClaim's refusal to produce the related documents is an improper attempt to shield from discovery these witnesses' further claims adjustment activities, particularly their reaction to B&G's proof of loss for damage from Hurricane Jeanne". *Plaintiff's Motion to Compel Production of Documents from VeriClaim, Inc.,* p. 3.

VeriClaim has submitted an affidavit from William F. Lamond, Jr. who is identified as the Lexington Claims Manager who oversaw and directed the handling of B&G's property damage claims arising from Hurricanes Charley, Frances, and Jeanne. *Exhibit "B"* Affidavit of William Lamont Jr., *VeriClaim, Inc.'s Memorandum of Law In Opposition To Plaintiff's Motion to Compel Production from VeriClaim,*. Mr. Lamont acknowledges that Lexington's lawyers, at his request, were in contact with "various of Lexington's agents and consultants that had assisted with the adjustment of (B&G's) hurricane claims" *id,* ¶10, and that his lawyers "retained several other entities and individuals to serve as consultants . . . in rendering legal services to Lexington and in anticipation of litigation with (B&G) related the Hurricane Jeanne". *Id,* ¶11. According to Mr. Lamont, those individuals included "Scott MacPherson and Anthony Scariano of VeriClaim, Bill Prediger (BCA), John Foley and Eric Ficken (Matson, Driscoll & D'Amico) Daniel Neeb (Halliwell Engineering & Associates) and Beth Commito and Peter Fogarty (Hagan, Streiff, Netwon & Oshiro" *id.* Indeed, all these individuals, plus Katherine Gish and Michael Arbour (VeriClaim) and David Gardiner (Hagen, Streiff, Netwon & Oshiro) appear on VeriClaim's revised Privilege Log. *Exhibit "A", VeriClaim, Inc.'s Memorandum of Law In Opposition To Plaintiff's Motion to Compel Production from VeriClaim.*

Lexington's claim of a blanket retention of the independent individuals who played a role in adjusting of the B&G insurance claims at issue here (and who would thus otherwise serve as potentially important fact witnesses) must be carefully reviewed and fully supported. While it is possible that each of these individuals may, in fact, have been hired as a non-testifying consulting expert to either assist Lexington's attorney in rendering legal advice to Lexington (thus making their communications attorney-client privileged) or for the purpose of providing assistance in anticipation of litigation (thus making their communications protected under F.R.C.P. Rule 26(b)(4)(B)), that fact should be conclusively established in the record before these witnesses, and their

communications with Lexington's attorneys, are ruled exempt from discovery. The affidavits produced to date by VeriClaim and Lexington to support this position, while helpful, are not determinative of this issue.

To that end, therefore, it is hereby RECCOMMENDED AND ORDERED that, B&G's Motion to Compel is GRANTED insofar as it requests supplemental evidential support for VeriClaim and Lexington's claim that communications by and between Lexington lawyers and;

 a) VeriClaim employees, Scott MacPherson, Anthony Scariano, Katherine Gish and Michael Arbour
 b) Building Consulting Associates, Inc. employee, Bill Prediger,
 c) Matson, Driscoll & D'Amico employees, John Foley and Eric Ficken
 d) Halliwell Engineering & Associates employee, Daniel Neeb
 e) Hagan, Streiff, Netwon & Oshiro employees, David Gardiner, Beth Commito and Peter Fogarty

are, and should be, protected by attorney client privilege, attorney work-product doctrine, the joint defense and common-interest privilege, or the protection afforded to consulting experts.

To the extent these individuals are identified as consultants or consulting experts retained by counsel for Lexington (or VeriClaim) to assist in rendering Lexington legal advice or in anticipation of litigation from B&G, that supplemental information should include;

 a) The date each individual (or employer organization) was retained as a consultant or an expert, the terms of their respective engagements, their compensation and the scope of their work (including a description of the legal services, if any, they were retained to assist Lexington lawyers in providing), and the identification of any documents recording or evidencing such retention, and
 b) The date Lexington made the final determination that coverage would not be afforded to B&G for damages claimed due to Hurricane Jeanne.

To the extent a common interest privilege is claimed by reason of these individuals (or their employer organizations) also retaining the Lexington lawyers for purposes of dealing with subpoenas issued in another case (or any other joint representation with Lexington), that additional information should include the date each individual (or employer organization) retained the Lexington lawyers, the terms and scope of that retention, and the general nature of any legal services actually rendered pursuant to that retention.

VeriClaim and Lexington shall have an additional 30 days from the date of this Order and Recommendation in which to file such additional affidavits as it may wish to

support the claim for privilege or protection as to documents by and between Lexington lawyers and the above identified individuals.

With respect to that portion of B&G's Motion that affirmatively seeks production of specified documents listed on the Revised Privilege Log, it is hereby RECCOMMENDED and ORDERED that the motion be DENIED. In the first instance, the B&G's Motion, while describing certain specific documents as examples of what should not be deemed privileged, *See, Plaintiff's Motion to Compel Production of Documents from VeriClaim, Inc.,* pp. 13-14, actually seeks production of, "all documents relating to the adjustment of B&G's claim against Lexington, regardless of whether those documents include or relate to communications with an attorney for Lexington or VeriClaim and regardless of whether Lexington has designated claims-related witnesses to the adjustment of the various hurricane claims as "consultants" or "experts" *id, at* p.15. The Motion to Compel should specifically reference each document listed in the Privilege Log it wants produced. Further, until such time as VeriClaim and Lexington elect whether or not to support their claim as Ordered and Recommended above, B&G's Motion to Compel is premature.

Recommended and Ordered this 21st day of October, 2008.

/s/ Lawrence M. Watson, Jr.
Lawrence M. Watson, Jr.
Special Master

On October 21, 2008, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel:

Michael A. Shafir, Esquire
Steven J. Brodie, Esquire
Carlton Fields, PA
4000 International Place
100 SE 2nd Street
Miami, FL 331331

Daniel Cramer Brown, Esquire
Carlton Fields, PA
215 S. Monroe Street

Amelia W. Koch, Esquire
Kent A. Lambert, Esquire
Roy C. Cheatwood, Esquire
Steven F. Griffith, Jr., Esquire
Baker Donelson, Bearman, Caldwell & Berkowitz
201 St. Charles Avenue, Suite 3600
New Orleans. LA 70170

Marvin P. Pastel, II, Esquire
Weinstock & Scavo, PC
Suite 300

Suite 500
Tallahassee, FL  32301

Carl D. Motes, Esquire
Arnold, Matheny & Eagan, PA
605 E. Robinson Street
Suite 730
Orlando, FL  32802

John N. Ellison, Esquire
John B. Berringer, Esquire
Jeremy Hennickel, Esquire
Douglas Widin, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

Drew Williams, Esquire
Kinsey Vincent Pyle
150 S Palmetto Ave, Suite 300
Daytona Beach, FL  32114

3405 Piedmont Road, NE
Atlanta, GA  30305

Eric E. Caugh, Esquire
Lindsey A. Davis, Esquire
Zelle, Hofmann, Voelbel, Nason & Gette, LLP
Suite 4000
500 Washington Ave., S
Minneapolis, MN  55415

Bruce DelValle, Esquire
DelValle Law Group
Post Office Box 265007
Daytona Beach, FL  32126-5007