IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRAY & GILLESPIE MANAGEMENT,
LLC, et al,

    Plaintiffs,

-vs.-                                                Case No.: 6:07-cv-222-Orl-19KRS

LEXINGTON INSURANCE COMPANY, a
Delaware Corporation, BELFOR USA
GROUP, INC., a Colorado Corporation,
BUILDING CONSULTING ASSOCIATES,
INC., an Illinois Corporation, and
VERICLAIM, INC., a Delaware Corporation,
_____/

## ORDER AND RECOMMENDATIONS OF SPECIAL MASTER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES FROM LEXINGTON INSURANCE COMPANY

      On November 6, 2007, Plaintiffs Bray & Gillespie Management, LLC, Bray & Gillespie, Delaware I, L.P., Bray & Gillespie X, LLC, Bray & Gillespie Plaza, LLC, Bray & Gillespie V, LLC, Bray & Gillespie VIII, LLC, and Bray & Gillespie LaPlaya, LLC (collectively "B&G") served their First Set of Requests for Production and First Set of Interrogatories to Defendant Lexington Insurance Company ("Lexington"). Lexington served its Responses to Plaintiffs' First Set of Requests for Production and Answers to Plaintiffs' First Set of Interrogatories on January 15, 2008.

      Included in Lexington's responses were various objections that form the basis of B&G's instant Motion to Compel. Specifically, B&G seeks to have the Court overrule Lexington's objections to Requests #4, 5, 19 and 20 of the First Set of Requests for Production, as well as the objections raised to Interrogatory #5 of the First Set of Interrogatories. B&G has also requested that the Court review Lexington's privilege log and privilege claims, and require Lexington to supplement its privilege log so the asserted privileges may be more fully assessed.

## REQUESTS FOR PRODUCTION #4,5,19 and 20; INTERROGATORY #5

Request #4 of B&G's First Set of Requests for Production seeks "[a]ll documents relating to claims under insurance policies sold by Lexington in which the policyholder(s) alleged property damage arising from multiple storms, such as the 2004 Hurricanes." Request #5 seeks "[a]ll documents for claims of damage arising from more than one tropical storm or hurricane in Florida between January 1, 2001 and the date of your response." B&G asks in Request #19 for "[a]ll books, manuals memos, bulletins, protocols, guidelines, policies, rules, instructions, operating procedures, handbooks, and instructional or other materials, created, prepared, used, or intended to be used or maintained for guidance, reference or training by persons responsible for handling claims made under the Property Policy." The final production request encompassed by the instant Motion is Request #20, which seeks [a]ll books, manuals, memos, bulletins, protocols, guidelines, policies, rules, instructions, operating procedures, manuals, handbooks, and instructional or other materials, created, prepared, used, or intended to be used or maintained for guidance, reference, or training by persons responsible for setting reserves on claims made under the Property Policy."

To each of these requests, Lexington interposed the identical objection:

Lexington objects to this Request as overly broad, vague, harassing, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Any claims made on policies issued by Lexington other than to Plaintiffs do not relate to any of the "live" counts against Lexington alleged in this action, nor do they relate to any claim or defense at issue in this case. Specifically, the "bad faith" claims against Lexington have been abated by this Court, and this Request thus cannot possibly lead to the discovery of any relevant or admissible evidence.

B&G's Interrogatory #5 asked Lexington, "Identify and describe other property claims for losses arising out the 2004 Hurricanes that you adjusted." Lexington objected in like fashion:

Lexington objects to this Interrogatory as overly broad, vague, harassing, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Any claims made on policies issued by Lexington other than to Plaintiffs do not relate to any of the "live" counts against Lexington alleged in this action, nor do they relate to any claim or defense at issue in this case. Specifically, the "bad faith" claims against Lexington have been abated by this Court, and this Interrogatory thus cannot possibly lead to the discovery of any relevant or admissible evidence.

Both parties, B&G in particular, rely heavily on the Court's ruling on similar issues in *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co., et al.*, Case No. 6:07-CV-236 ("*Hartford*"). In a transcript of a hearing in *Hartford* to which both parties refer

("Transcript"), and which is attached as an exhibit to B&G's Motion to Compel, the Court discussed the relevance and discoverability of things such as manuals, guidelines, operating procedures and the like. The Court also discussed the extent to which information regarding other similar claims would be discoverable. *See Transcript* at 1-5. The Transcript reflects the Court's clear rejection of the notion that discovery concerning manuals, guidelines and so forth were irrelevant in the absence of a bad faith claim. Rather, the Court instead stated that to the extent a given policy manual, handbook or guideline was used in making a decision about paying a claim, some degree of inquiry into the way in which the insurer handled similar claims would likewise be permissible. *Id.* at 2-3. Clearly, however, the Court did not intend to declare "open season to see how [the insurer] handled every single three damage insurance claim in 2004." *Id.* at 4. Thus, prior to allowing B&G to obtain documents, the Court in *Hartford* stated that B&G would first have to lay a foundation through depositions that similar claims were treated differently. *Id.*

It is against this backdrop that Lexington's objections to Interrogatory #5 must be reviewed. Based upon the Court's statements in *Hartford*, Lexington's objections that the interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence must be overruled. Of concern, however, is the facially breathtaking scope of the Interrogatory as phrased. For example, the interrogatory does not distinguish between claims arising from losses allegedly sustained in one storm versus multiple storms, between residential and commercial properties, or between different types of insurance policies (*e.g.* all risk or otherwise) a given insured may have chosen. To require Lexington to answer Interrogatory #5 as phrased would appear to far beyond what the Court contemplated in *Hartford*. The Interrogatory must be appropriately limited in scope.

Accordingly, it is the ORDER and RECOMMENDATION of the Special Master that Lexington be required to answer Interrogatory #5 by identifying and describing all other property claims for losses arising out the 2004 Hurricanes that it adjusted, but *only* to the extent that (1) the insuring agreement is the same or substantially similar as the agreement insuring B&G, *and* (2) the insured sought recovery for losses arising from more than one of the 2004 Hurricanes.

Turning now to Requests #4 and 5 of B&G's First Set of Requests for Production, B&G asserts, *inter alia*, that because the Court in *Hartford* permitted it to inquire about other claims for hurricane damage in Rule 30(b)(6) depositions, "Lexington should be required to produce similar information in the context of requests for production of documents and in interrogatories propounded by B&G." *See B&G's Motion to Compel* at 17. Lexington quite correctly points out, however, that the Court's reasoning in *Hartford* contemplated B&G first laying a foundation through depositions that might then make the requested documents discoverable. Absent that foundation, Requests #4 and 5 are premature and of questionable relevance at this point.

Accordingly, it is the ORDER and RECOMMENDATION of the Special Master that B&G's Motion to Compel should be denied as to Requests #4 and 5.

Request #19 seeks Lexington's claims handling manuals, guidelines and such. As the Court expressed in *Hartford*, such materials are relevant, and Lexington's objections to the contrary must be overruled. By the same token, however, Request #19 presently has relevancy problems because B&G has not laid the necessary foundation through depositions (or, for that matter, through the forthcoming answer to Interrogatory #5) to warrant production of these documents. For the same reason, Request #20 is premature and irrelevant at this time.[1]

Accordingly, it is the ORDER and RECOMMENDATION of the Special Master that B&G's Motion to Compel documents responsive to Requests #19 and 20 should be denied at this time.

**LEXINGTON'S PRIVILEGE LOG**

Finally, B&G seeks an order compelling Lexington to prepare a supplemental privilege log. Lexington's Response to B&G's Motion to Compel states that counsel for the parties have been working together both before and after filing the Motion to revisit B&G's concerns. Lexington has thus asked that the Special Master defer any ruling on the issues pertaining to the privilege log. Lexington's counsel has represented that B&G's counsel suggests "it would be appropriate for the Special Master to provide the parties with guidance as to the sufficiency of the general terminology used in Lexington's privilege log, as referenced in its moving papers, for purposes of allowing an assessment of the invocations of privilege, so that the parties can gauge their further discussions of the issues accordingly." *Response* at 8.

The Court has in place a June 7, 2007 "Standing Order Regarding Privilege Logs" that is dispositive of this inquiry ("Standing Order"). It is consistent with prior Middle District case law on this issue. *See, e.g., Roger Kennedy Construction, Inc. v. Amerisure Ins. Co.* 2007 WL 1367246 (M.D. Fla., May 7, 2007); *Gupta v. Walt Disney World Co.,* 2006 WL 2724899 (M.D. Fla., September 22, 2006). A comparison of the Standing Order and Lexington's privilege log reveals the following deficiencies in the latter:

- The Standing Order requires inclusion of the "name and job title or capacity of the provider of the information or author of the document". Lexington's privilege log simply lists names under the column heading "From".

- The Standing Order requires inclusion of the "name and job title or capacity of each recipient of the information or document". Lexington has again simply listed names under column headings "To" and "cc". It is impossible from reviewing the log to differentiate between lawyers, clients, and third parties.

---

[1] As to Request 20, Lexington questions the relevancy of any materials relating to the establishment of reserves, asserting that while information about reserves might be relevant in a bad faith action or in a case involving policy interpretation, such information is irrelevant to a dispute over "coverage". Indeed, on the surface, it would appear that policies pertaining to setting reserves would be of tenuous relevance, at best. Because I find Request 20 to be premature, however, I make no ruling on this objection at this time.

- The Standing Order requires a statement of the date on which the document was prepared or the information was learned, and if different, the date on which it was sent to or shared with those other than the provider or author. While Lexington has provided a date for each document, one cannot determine whether this is the date the document was prepared, sent, or both.

- The Standing Order requires a privilege log to state the "subject matter addressed in the information or document". While in some instances, Lexington does sufficiently identify the subject matter of a communication (*e.g.*, "File record of correspondence with counsel regarding deductibles"), other descriptions (*e.g.*, "File record of telephone conversation with counsel", "Forwarding attachment") are woefully inadequate.

Counsel is to be commended for their continued efforts to resolve the privilege log issues privately. However, to the extent they cannot reach an agreement, a supplemental privilege log must be submitted that corrects the deficiencies set forth above.

Based upon the foregoing, therefore, it is the RECOMMENDATION and ORDER of the Special Master that:

1) B&G's Motion to Compel as to Interrogatory 5 is hereby GRANTED in part. Lexington shall, within 20 days from the date hereof, serve an answer to Interrogatory 5 identifying and describing all other property claims for losses arising out the 2004 Hurricanes that it adjusted, but only to the extent that (1) the insuring agreement is the same or substantially similar as the agreement insuring B&G, and (2) the insured sought recovery for losses arising from more than one of the 2004 Hurricanes;

2) B&G's Motion to Compel Production of Documents as to Requests 4, 5, 19, and 20 is hereby DENIED WITHOUT PREJUDICE. B&G may renew its Motion to Compel upon laying the appropriate foundation for the discovery of the requested materials.

3) B&G's Motion to Compel a Supplemental Privilege Log is hereby GRANTED. B&G shall, within 20 days from the date hereof, serve a supplemental privilege log that complies with the Court's Standing Order and corrects the deficiencies set forth above.

Recommended and Ordered this 11th day of November, 2008.

_____
Lawrence M. Watson, Jr.
Special Master

On November 11, 2008, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel:

Michael A. Shafir, Esquire
Steven J. Brodie, Esquire
Carlton Fields, PA
4000 International Place
100 SE 2nd Street
Miami, FL  331331

Daniel Cramer Brown, Esquire
Carlton Fields, PA
215 S. Monroe Street
Suite 500
Tallahassee, FL  32301

Carl D. Motes, Esquire
Arnold, Matheny & Eagan, PA
605 E. Robinson Street
Suite 730
Orlando, FL  32802

John N. Ellison, Esquire
John B. Berringer, Esquire
Jeremy Hennickel, Esquire
Douglas Widin, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103

Drew Williams, Esquire
Kinsey Vincent Pyle
150 S Palmetto Ave, Suite 300
Daytona Beach, FL  32114

Amelia W. Koch, Esquire
Kent A. Lambert, Esquire
Roy C. Cheatwood, Esquire
Steven F. Griffith, Jr., Esquire
Baker Donelson, Bearman, Caldwell & Berkowitz
201 St. Charles Avenue, Suite 3600
New Orleans. LA  70170

Marvin P. Pastel, II, Esquire
Weinstock & Scavo, PC
Suite 300
3405 Piedmont Road, NE
Atlanta, GA  30305

Eric E. Caugh, Esquire
Lindsey A. Davis, Esquire
Zelle, Hofmann, Voelbel, Nason & Gette, LLP
Suite 4000
500 Washington Ave., S
Minneapolis, MN  55415

Bruce DelValle, Esquire
DelValle Law Group
Post Office Box 265007
Daytona Beach, FL  32126-5007