# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRAY & GILLESPIE MANAGEMENT LLC, BRAY & GILLESPIE, DELAWARE I, L.P., BRAY & GILLESPIE X, LLC, et al.**
        **Plaintiffs,**

**-vs-**        Case No. 6:07-cv-222-Orl-35KRS

**LEXINGTON INSURANCE COMPANY, BELFOR USA GROUP, INC., BUILDING CONSULTING ASSOCIATES, INC., VERICLAIM, INC.**
        **Defendants.**
_____/

## ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** BELFOR USA GROUP, INC'S MOTION AND INCORPORATED MEMORANDUM TO COMPEL TESTIMONY BY HAROLD LUEKEN AND FOR RELIEF[1] FROM IMPROPER DEPOSITION INSTRUCTIONS AND OBJECTIONS (Doc. No. 343)
>
> **FILED:** October 22, 2008
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

Defendant Belfor USA Group, Inc. ("Belfor") asks the Court to overrule the decision of the Special Master, stated on the record during a deposition, that discussions between Plaintiffs (hereinafter "B&G") and Juridica, a nonparty, regarding the techniques or evaluations of the present

---

[1] The Court granted relief from improper deposition instructions and objections by separate order. Doc. No. 349.

case are privileged or protected. *See* Doc. No. 345-3 at 124-27. B&G responds that the motion is untimely and, alternatively, that the Special Master's decision must be sustained. Doc. No. 356. Some background is necessary before addressing the merits of the parties' positions.

**I.     BACKGROUND**.

The present case arose from damage to various properties owned by B&G during three hurricanes that passed through Florida in 2004. On February 13, 2007, B&G instituted the present lawsuit against Defendants Lexington Insurance Company (B&G's insurer), Vericlaim, Inc. (the insurance adjuster), and Belfor USA Group, Inc. (the company that performed remediation work).

B&G hired Harold Lueken as senior vice-president and general counsel as of March 10, 2006. Lueken Dep. Doc. No. 345-3 at 21-22, 30.[2] Lueken stopped working as general counsel when Robert Rathke was hired in September 2006. *Id.* at 30. At that time, Lueken became executive vice-president and chairman of the executive committees for the B&G companies. *Id.* at 55-56. Lueken testified that he no longer worked in a legal capacity after that date, although B&G disputes that testimony. *Id.* at 31-32; *see also* Doc. No. 182 at 5 (quoting from state court case against Lueken). In October 2007, Lueken became chief operating officer. Doc. No. 345-3 at 57. Lueken left B&G in March 2008. Doc. No. 345-3 at 82.

In the fall of 2007, B&G began trying to obtain outside financing for the present litigation. Doc. No. 345-3 at 122-23, 139-40, 152-53, 155-56. Lueken began making inquiries in his business capacity. Doc. No. 345-3 at 119-20, 140, 154, 158. At some point, Lueken engaged in discussions

---

[2] The Ocean Waters companies referred to in the deposition were affiliated with B&G. *See* Doc. No. 325 at 8.

with an entity called Juridica. Doc. No. 345-3 at 106. Belfor represents, without objection by B&G, as follows:

> Juridica is a "lawyer-owned financial services company operated in an investment banking tradition and focused exclusively on capital and finance for corporations, law firms, lawyers, and claim-holders worldwide." More specifically, Juridica is in the business of speculating on high-stakes litigation by "buying" interests in large-dollar civil claims. For businesses such as plaintiffs, Juridica thus allows them to "hedge" against the economic risks of pursuing a particular claim by "monetizing" a portion of the claim up front in exchange for a percentage based interest in any recover that might ultimately be realized.

Doc. No. 343 at 7 (internal footnotes omitted).

Lueken testified that B&G may have entered into a confidentiality agreement with Juridica, but that B&G did not enter into a contract with B&G. Doc. No. 345-3 at 117. In support of its response to the motion, B&G submitted an unauthenticated document entitled "Mutual Confidentiality, Non-Disclosure and Privilege Agreement" purportedly entered into by Ocean Waters Investment, LLC, Bray & Gillespie, Inc., and Juridica Management Limited on January 14, 2008. Doc. No. 346-2.

Juridica asked for financial documents. Doc. No. 345-3 at 135. Lueken testified that he was concerned that B&G might provide materially misleading financial information. *Id.* at 136. Lueken testified that Juridica came up with a value of B&G's claims against Lexington and Belfor. Doc. No. 345-3 at 123-25. Even though counsel for B&G did not establish the factual basis for assertions of privilege or protection as required by my Standing Order Regarding Privilege Logs,[3] and it is not

---

[3] Standing Order Regarding Privilege Logs (M.D. Fla. June 7, 2007), found online at http://www.flmd.uscourts.gov – Judicial Info – Judge Spaulding – Standing Orders (hereinafter "Standing Order").

-3-

apparent from the transcript that a question was pending but unanswered,[4] the Special Master ruled that "communications regarding the details of this lawsuit between this witness and Juridica are privileged."  Doc. No. 345-3 at 125, 127.[5]  The deposition was suspended regarding this line of questioning to permit counsel for Belfor to file a motion with the court.  Doc. No. 345-3 at 129.

**II.   ANALYSIS.**

   *A.   Timeliness of the Motion.*

The Order Appointing Special Master provides in relevant part that the Special Master may attend depositions and make legal rulings on objections or instructions not to answer based on legal privileges and protections, "which rulings are subject to review by the district judge or the magistrate judge at the written request of any party within 5 days after the conclusion of the deposition."  Doc. No. 252 at 3.  The deposition transcript reveals that Lueken's deposition has not yet concluded.  Therefore, the 5-day period to file a motion seeking review of the Special Master's ruling is inapplicable.  Accordingly, the present motion was timely filed.

   *B.   Objections Based on the Attorney-Client Privilege.*

In cases where state law provides the rule of decision, questions of privilege are resolved according to the appropriate state law.  Fed. R. Evid. 501; *see also Universal City Devel. Partners,*

---

[4] Lueken was asked the following question: "To your knowledge during the course of your discussions related to the term sheet, did Juridica assign any sort of value to Bray & Gillespie's claims against Lexington and my client?  Doc. No. 343-2 at 123.  Lueken responded: "So Juridica due diligenced the lawsuit and came up with a value as to what they thought Bray & Gillespie was owed." *Id.* at 125.  The Special Master cannot be faulted for ruling when no question was pending because the inappropriate conduct of counsel made it difficult to follow the questioning.  *See* Doc. No. 349.

[5] None of the parties argue that this information is not relevant or discoverable.  I note that it may fall within evidence admissible under Fed. R. Evid. 404(b).

*Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005).[6] Under Florida law, the attorney-client privilege is governed by section 90.502 of the Florida Statutes.

The elements of Florida's attorney-client privilege, referred to in the statute as the lawyer-client privilege, are as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Cabanas v. Ford, Armenteros, Manucy, Inc.*, 727 So. 2d 1100, 1102 (Fla. 3d Dist. Ct. App. 1999). When, as here, the attorney-client privilege is asserted by corporate entities, the confidential aspect of the attorney-client privilege is protected only if dissemination of the information is limited to employees of the corporation who have a need to be included in the communications. *See, e.g., S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994).

The burden of establishing the application of the attorney-client privilege rests on the party asserting the privilege. *Id.*; *accord Cone v. Culverhouse*, 687 So.2d 888 (Fla. 2d Dist. Ct. App. 1997). Under my Standing Order, information sufficient to provide *prima facie* support for the assertion of the attorney-client privilege must be stated on the record during a deposition at the time an objection

---

[6] This rule differs from the one applied in cases arising in whole or part under federal statutes. Accordingly, cases such as *Lockheed Martin Corp. v. L-3 Commc'ns Corp.,* Case No. 6:05-cv-1580-Orl-31KRS, cited by Belfor, Doc. No. 343 at 14, do not provide guidance on the scope of the attorney-client privilege in the present case.

is made or an attorney instructs a witness not to answer a question. Standing Order at 3. The Standing Order also sets forth the information that a party asserting a privilege must provide in response to a motion to compel. *Id.* at 2.

B&G did not state on the record during Lueken's deposition facts sufficient to support the assertion that each element of the corporate attorney-client privilege exists with respect to information Lueken was asked to provide. B&G also did not submit any evidence in response to the motion to compel to support its assertion of the attorney-client privilege. As such, B&G has not sustained its burden of proving that any of the information sought is protected by the attorney-client privilege. Accordingly, all objections raised in Lueken's deposition based on the attorney-client privilege are overruled. The Special Master or the Court will resolve objections based on attorney-client privilege on a question-by-question basis going forward.

*B.     Work Product.*

> The work product doctrine was established by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 511 (1947). This doctrine, now codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents prepared in anticipation of litigation or for trial. The rule provides qualified protection to "documents and tangible things . . . prepared in anticipation of litigation or for trial" by or for a party, or by or for a party's representative. Fed. R. Civ. P. 26(b)(3).

*Abdallah v. Coca-Cola Co.*, No. CIV A1:98CV3679RWS, 2000 WL 33249254, at *4 (N.D. Ga. Jan. 25, 2000). The work product doctrine also protects oral expressions of an attorney's mental impressions, legal theories and subjective evaluations. *Lott v. Seaboard Sys. R.R., Inc.*, 109 F.R.D. 554, 557-58 (S.D. Ga. 1985). However, the work product doctrine does not protect facts contained in documents prepared in anticipation of litigation. *See United States v. Pepper's Steel & Alloy, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990).

The party asserting that a document or information is protected work product has the burden of establishing that the document was prepared or information was provided both (1) in anticipation of litigation and (2) by the party or by a representative of the party. Fed. R. Civ. P. 26(b)(3); *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir. 1985); *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 600 (M.D. Fla. 1990).

My Standing Order also requires a party asserting the work product protection to state on the record at the time that an objection is made or instruction not to answer is given the facts necessary to support the assertion of the protection. Similarly, it sets forth the information required to sustain the assertion of the work product protection in response to a motion to compel. Standing Order at 2-3.

It is not clear from the transcript of Lueken's deposition if or when B&G intended to assert the work product protection rather than the attorney-client privilege. *See, e.g.,* Doc. No. 345-2 at 106, 111 (Mr. Breene stated, "[W]e're specifically asserting privilege over the fact of the discussions with Juridica. . . . On the basis that this is essentially an attempt by the policyholder to seek funding for the coverage litigation, and as such it's protected." Thereafter, Mr. DelValle stated, "It is privileged. It's work-product privilege."). To the extent that B&G intended to rely on the work product protection, it did so through instructions not to answer as to broad subject matter, rather than in response to specific questions. Such blanket assertions are improper. Fed. R. Civ. P. 26(b)(5)(A); *accord St. Johns Ins. Co. v. Nautilus Ins. Co.*, No. 8:07-cv-2312-T-30MAP, 2008 WL 1897572 (M.D. Fla. April 28, 2008).

Accordingly, to the extent that objections and instructions not to answer were based on the work-product protection, those objections and instructions are overruled. The Special Master or the

Court will determine the applicability of the work product protection on a question-by-question basis going forward.

### C. Reopening of Lueken's Deposition.

Going forward, counsel are directed to assert a specific privilege or protection on a question-by-question basis and to comply with my Standing Order by stating *prima facie* support for the privilege or protection on the record. I recommend that counsel coordinate the reopening of Deponent Lueken's deposition with my courtroom deputy clerk on a day on which I will be available to resolve privilege and protection objections if any are asserted.

**DONE** and **ORDERED** in Orlando, Florida on November 17, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE