IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRAY & GILLESPIE MANAGEMENT,
LLC, et al,

      Plaintiffs,

-vs-                                       Case No.: 6:07-cv-222-Orl-19KRS

LEXINGTON INSURANCE COMPANY, a
Delaware Corporation, BELFOR USA
GROUP, INC., a Colorado Corporation,
BUILDING CONSULTING ASSOCIATES,
INC., an Illinois Corporation, and
VERICLAIM, INC., a Delaware Corporation,

      Defendants.
_____/

**ORDER AND RECOMMENDATIONS OF SPECIAL MASTER ON VERICLAIM INC.'S MOTION TO COMPEL DISCOVERY AND REQUEST TO DETERMINE SUFFICIENCY OF BRAY & GILLESPE'S RESPONSES TO FIRST SET OF DOCUMENT REQUESTS AND FIRST SET OF INTERROGATORIES**

      By Motion filed by Defendant VeriClaim, Inc. ("VeriClaim") on August 15, 2008, and responded to by Plaintiff, Bray & Gillespie Management LLC et al ("B&G") on August 29, 2008, the Special Master has been requested to review and resolve a dispute between these parties concerning responses to a Request for Production of Documents, and certain Interrogatories. More specifically, VeriClaim has requested certain relief with respect to B&G's overall response to its "First Set of Document Requests to Plaintiff", and B&G's specific responses to eleven (11) of its, "First Set of Interrogatories to Plaintiff".

**VeriClaim's Motion to Compel - First Set of Document Requests to Plaintiff**

      The only issue raised by VeriClaim's present Motion to Compel is whether or not B&G should be required to provide "a comprehensive and useful means of identifying where, among the entire universe of documents B&G has produced in this case, documents responsive to VeriClaim's targeted document requests can be located". *Defendant VeriClaim Inc.'s Motion to Compel Discovery etc. p. 3.* Stated another way, VeriClaim has requested the Court to compel B&G to produce a "comprehensive index for all the B&G document productions" *id. p. 8.*

In response, B&G has asserted that it has provided VeriClaim all of the documents VeriClaim has requested "as they are kept in the ordinary course of business" and, accordingly, has no obligation to reorganize them in a fashion that more directly complies with the categories set forth in VeriClaim's Requests.[1] *Plaintiff's Opposition to Defendant VeriClaim Inc.'s Motion to Compel Discovery etc. p. 6, 8.*

While this appears to be a relatively simple issue on its face, the arguments and affidavits submitted by the parties concerning this dispute reveal a slightly more complex dispute.

B&G's actual response to VeriClaim's Request for Production addressed 31 of the 34 separate Requests in a virtually identical fashion.[2] After raising identical objections on the grounds that each Request was (a) overly broad and burdensome (b) duplicative of Requests submitted by other defendants (c) seeking documents already in VeriClaim's possession, and then lodging what might be termed a "contingent objection" in the event the Request was (d) seeking documents in the possession and control of a third party,[3] B&G made the following response:

> Subject to and without waiving the foregoing objections, B&G has produced relevant, non-privileged documents in response to document requests from Defendants Lexington and Belfor. Please let us know if you did not receive any of these productions or if you believe certain responsive documents were not contained in these productions.

*See, Plaintiff's Opposition to Defendant VeriClaim Inc.'s Motion to Compel Discovery etc. Exhibit "D", Responses 4-34.*

In other words, B&G responded to the bulk of VeriClaim's Requests for Production of Documents by first noting that it had produced some documents to other defendants in the case, then asking VeriClaim to "let us know" if they didn't get copies of those productions or if VeriClaim felt the documents they were now requesting were not included in those produced to others.

Despite the obvious concerns raised by this response[4], VeriClaim's Motion to Compel merely asks that it be provided with an "index" telling them where the

---

[1] In support of its position, B&G has cited the language of F.R.C.P. Rule 34(E)(i) which states, "A party must produce documents as they are kept in the ordinary course of business *or* must organize and label them to correspond with the categories in the request". (Emphasis added).

[2] B&G Responded to Requests 1-3 differently than 4-34.

[3] In some, but not all, of its Responses to Requests 4 to 34, B&G also raised the potential objection that the Request in question may call for the production of privileged documents.

[4] At the outset, the Response doesn't indicate whether B&G actually will provide, or actually did provide VeriClaim with copies of whatever it provided the other defendants. Paraphrased, the Response by B&G simply says "we gave some documents to the other defendants; let us know if you didn't get a copy of them". VeriClaim was added to this lawsuit after the original complaint was filed and after the initial discovery was exchanged with the other defendants. Under normal circumstances, VeriClaim may not have been on the service list responding to the earlier Requests by the other defendants. Since VeriClaim did not raise this rather elemental issue in its Motion to Compel, however, it will be assumed they did ultimately

documents they have requested could be found in the documents B&G produced for the other defendants. As noted, B&G's response is to point to F.R.C.P. 34(E) (i) and argue that since the documents were produced to the other defendants as they were kept in the ordinary course of business, it did not have to tell VeriClaim anything further.

B&G's evidential submissions to support the proposition that what they produced to the other defendants (and, presumably, ultimately provided to VeriClaim) were in the same form and fashion as they were maintained in the ordinary course of business are not persuasive. According to the affidavits submitted by B&G, when the first of the storms involved in this lawsuit occurred in the fall of 2004, Mr. Sydney Slome, B&G's then Vice President of Operations, sent out instructions on maintaining certain documentary records to each General Manager of the various B&G hotel properties suffering storm damage. He directed each property manager to provide copies of all documents they generated pertaining to (a) that property's storm damages, (b) its repair and remediation efforts, and (c) its business interruption issues to Ms Vickie Mosebach in the B&G central offices. Ms. Mosebach, in turn, organized those copies into notebooks created for each property and maintained them under her direct custody and control. Ms. Mosebach also received copies of all e-mails and other electronically generated information pertaining to each property's storm damage, repairs, remediation and interruption losses which she printed out and kept in notebooks as well. *See, Plaintiff's Opposition to Defendant VeriClaim Inc.'s Motion to Compel Discovery etc. Exhibits "G" (Declaration of Sydney Slome) and Exhibit "I" (Declaration of Vickie Mosebach).* As B&G argues, these procedures were adopted well before any litigation arose with the named defendants and because B&G knew, based on "earlier storms that hit B&G properties in 1999" that "retention of business records is important" for, among other things, "damage claim purposes". *Id.* Exhibit "G" p. 2.

The collected copies of these individual property records as maintained by Ms Mosebach became the source documents produced by B&G in response to the Requests for Production submitted in this proceeding. According to the briefs filed, these documents ultimately grew to more than 800,000 in number.

At the outset, one might easily argue that the "Mosebach copies" of the business records kept by each of the affected B&G properties might not qualify as records "kept in the ordinary course of business" - particularly when compared to the original files maintained by each property. Those copies were apparently established, in part, to support filing a unique, one time, insurance damage claim as opposed to any ongoing business operations. Further, it seems clear that copies of records maintained by Ms. Mosebach had undergone at least one screening and selection process when the individual property managers made the decision about what to send her. It is, therefore, fairly debatable as to whether the "Mosebach copies" were records "kept in the ordinary course of business".

---

receive copies of whatever B&G provided to the other defendants in the case. VeriClaim has not raised any other issues with the sufficiency of this Response.

The present motion, however, does not need to be decided based upon whether or not the Mosebach copies, as collated and organized by Ms. Mosebach, constituted records kept in the ordinary course of business for purposes of satisfying F.R.C.P. Rule 34(E)(i). As it turns out, the organizational structure of even those documents was disturbed by subsequent events.

In 2006, two years after the instructions went out to create the Mosebach copies of storm damage related documents and at a point in time in which, "the possibility of litigation became a near certainty" *Id*, Ms. Mosebach was instructed to transport all her collected documents to a special "war room" under the control of B&G's in house counsel, Harold Lueken. It is unclear exactly what Mr. Lueken did with the documents while they were under his control, [5] but it can be assumed they ultimately served in some capacity to support the present litigation. We do know the documents were taken out of the notebooks created by Ms. Mosebach, and scanned into a computer hard drive by "four summer interns". Those electronically stored images were then transposed to computer discs which were delivered to the defendants in an effort to comply with their document requests. *Id.* Ms. Mosebach reported that the next time she saw the documents, the individual property binders she prepared "were unfortunately no longer intact" and the documents had not been replaced after they had been scanned. *Id, Exhibit "I" p. 3*

If the records created, indexed and organized by Ms. Mosebach were, in fact, "as kept in the ordinary course of business", it seems clear they became something else entirely when the documents were extracted from Ms. Mosebach's notebooks, scanned and converted to computer images, stored on a hard drive, then transferred on to computer disc for delivery to the defendants and, subsequently, to VeriClaim. There is insufficient evidence to support the contention that the documents thus ultimately delivered to VeriClaim were, in fact, "as kept in the ordinary course of business". While F.R.C.P. Rule 34 (E)(i) gives B&G the option of producing documents in that fashion, it would appear B&G has not done so with the documents they delivered to VeriClaim.

For the reasons set forth above, it is therefore ORDERED and RECOMMENDED that VeriClaim's Motion to Compel is GRANTED and that B&G shall on or before 20 days from this date, provide VeriClaim with an index of the documents produced identifying, by Bates Stamp number or range, (a) the original file and sub-file designations of the documents as they were kept in the ordinary course of business by each separate property OR, (b) the file or group designations of the copies of the documents as they were organized and maintained by Ms. Mosebach including any designated sub-files or sub-group divisions she originated and (c) indicate where in the designated files or sub-files thus indexed are the documents responding to each of VeriClaim's Requests for Production to be found.

---

[5] It is not clear from the affidavits submitted, for example, whether or not the various Property Managers continued their practice of sending copies of documents they generated on damage, repairs or income losses to Mr. Lueken, or whether Mr. Lueken continued Ms. Mosebach's methods of indexing and organizing those documents after he assumed responsibility for them.

### VeriClaim's Motion to Compel - First Interrogatories to Plaintiff

VeriClaim has also moved to compel answers, or better answers, to eleven (11) of its First Interrogatories to Plaintiff, i.e., Interrogatories 1, 5, 6, 7, 8, 11, 13, 14, 16, 17, and 18. B&G asserts it has already agreed to provide supplemental answers to six (6) of these Interrogatories, i.e., numbers 1, 6, 7, 8, 13, and 14, in a "meet and confer" session confirmed in an August 14, 2008 letter. *Id. at p. 10, Exhibit "E" p. 3*. B&G objects to the rest of the Interrogatories for the reasons discussed below.

If B&G supplemented its Answers as indicated in its August 14, 2008 letter, that fact has not been made known to the Special Master, and there has been no notice of withdrawal filed by VeriClaim with respect to any portion of the instant Motion. Accordingly, consideration has been given to each Interrogatory answer challenged herein.

Taken in the order the contested Interrogatory answers appear in VeriClaim's Motion, the Special Master has made the following determinations:

**Interrogatory #1** (Seeking identification of those with knowledge of certain claims and a description of what they know).

In Interrogatory #1 VeriClaim requests B&G to identify all persons "with knowledge" of B&G's tortuous interference claims and to "describe his or her knowledge". B&G objected to this inquiry on the grounds that (a) the Interrogatory as phrased was vague, (b) the Interrogatory called for privileged information, and (c) the Interrogatory required speculation to answer. At the same time, however, B&G did identify nine (9) individuals as persons "they believe have knowledge" of the tortuous interference claims. B&G did not, however, describe what those people knew about those claims. VeriClaim has moved to compel a response to that missing portion of Interrogatory #1.

It is hereby ORDERED and RECOMMENDED that VeriClaim's Motion to Compel further information from B&G in its Answer to Interrogatory #1 be DENIED. Answering an inquiry to describe what certain identified witnesses may know about a subject calls for speculation or would require the unreasonably burdensome task of seeking those individuals out and inquiring as to their state of mind. What the witnesses identified may actually know can be determined by VeriClaim through other discovery processes as easily as B&G.

**Interrogatory #5** (Seeking the identification of the damage to each Property caused by Jeanne which B&G claims VeriClaim (wrongfully) designated as being caused by Francis or Charlie)

**Interrogatory #16** (Seeking the identification of the damage to each B&G Property caused by Hurricane Jeanne).
These two Interrogatories clearly call for two different answers;

a) What was the damage to each Property caused by Jeanne? and

b) What was the damage to each Property caused by Jeanne that B&G contends VeriClaim improperly designated as being caused by Charlie and Francis?

B&G however, answered each in an identical fashion. B&G first objected to each Interrogatory as being "premature", and privileged. B&G then listed generic building components (roof, concrete, structural steel, fixtures and furniture, earlier repairs etc.) as purportedly damaged by Jeanne (without designating what Properties suffered those damages), gave an estimated combined gross dollar value of all damage caused by Jeanne to six (6) of their properties ($25 million total to Treasure Island, Plaza Resort, Plaza Ocean Club, Best Western La Playa, Bermuda House, and Sailmaker Inn) and then gave an estimated dollar value of damage caused by Jeanne to four (4) of the six (6) Properties in question (Plaza Resort $3.3 million; Plaza Ocean $800,000; Best Western La Playa $6.9 million and Bermuda House $2.7 million).

B&G argues they have thus "identified information concerning the damage caused to its Properties by the Hurricanes as well as information proving that . . . several B&G Properties (Treasure Island, the Plaza, La Playa, and Bermuda House) were damaged extensively by Hurricane Jeanne" *Id. at p. 10*. The information supplied, however, simply does not respond to the Interrogatories submitted.

Interrogatory #5 asks B&G to identify the damage done to each property that was caused by Jeanne, but which VeriClaim erroneously attributed to Francis or Charlie. The answer to Interrogatory #5 provided by B&G does not provide that information. A centerpiece in this lawsuit is the notion that the defendants effectively deprived B&G of $25 million in insurance proceeds by attributing damage done by Hurricane Jeanne to damage caused by Hurricanes Francis and Charlie - in short, falsely asserting that the three storms presented but two "occurrences" under the terms of the Lexington Policy. VeriClaim is entitled to an answer describing the damages done by Jeanne to each Property that it is charged with miscasting as caused by Francis or Charlie.

Similarly, Interrogatory # 16 asks the slightly broader question concerning an overall description of the damage caused by Jeanne to each of the Properties. While B&G's answer does describe overall damages it has attributed to Jeanne, it does not indicate which of the Properties suffered what damages. Further, giving gross dollar values of "Jeanne damages" to six (6) of their Properties, followed by specific dollar values of "Jeanne damages" to only four (4) of the six, doesn't help clarify anything. Again, the answers given are unresponsive to the questions asked.

For the forgoing reasons, it the ORDER and RECOMMENDATION of the Special Master that VeriClaim's Motion to Compel as to Interrogatories #5 and #16 be

GRANTED and that B&G shall, on or before 20 days from this date, supplement its answers to such Interrogatories to respond to the questions posed.[6]

**Interrogatory # 6** - (Seeking identification of communications in which VeriClaim is attributed with stating that Belfor was incapable producing an accurate scope of repair).

**Interrogatory #7** – (Seeking identification of communications in which B&G informed VeriClaim it wanted to terminate Belfor).

**Interrogatory #8** – (Seeking identification of VeriClaim and BCA representatives who continued to insist that Belfor do all remediation work and the details of those communications).

Each of these Interrogatories refers to specific allegations made by B&G in its Amended Complaint. The text of Interrogatories #7 and #8 go so far as to refer to the paragraph of the Amended Complaint where the B&G contention under scrutiny can be found. B&G's response to each of these Interrogatories was virtually identical. B&G first claimed these Interrogatories were overly broad, burdensome, and "required an unreasonable investigation". They then claimed the Interrogatories were all objectionable because the information sought was already in VeriClaim's possession or control. Finally, B&G claimed the Interrogatories were objectionable "to the extent that (they) seek to require (B&G) to identify communications to which they are not a party, *may not even have knowledge of,* and which they may not have in their possession, custody or control. *Id, Exhibit "C", pp 11-13.* (Emphasis added).

Given the fact that F.R.C.P. 11(b) (3) specifically requires that an attorney presenting allegations in pleadings certify that "factual contentions have evidentiary support", one certainly hopes the latter objection to these Interrogatories is an inadvertent misstatement. In any event, B&G made these allegations and VeriClaim is entitled to inquire as to their specifics.

For the reasons set forth above, it is the ORDER and RECOMMENDATION of he Special Master that VeriClaim's Motion to Compel as to Interrogatories 6, 7, and 8 be GRANTED and B&G shall, on or before 20 days from this date, supplement its answers to such Interrogatories to respond to the questions posed.

**Interrogatory #13** (Seeking identification of communications between B&G and others concerning (1) different damages caused by each hurricane (2) whether damage was caused by one occurrence or multiple occurrences and (3) the number of deductibles under the policy).

---

[6] B&G has also made reference to the fact that it may require an expert to sort out what damages were caused by what storms and answering these Interrogatories must thus await completion of the work presumably underway by their experts. If that is the case, answers may be propounded "subject to confirmation" by the experts' input with the understanding that the proffered Answers are to be further updated when the information becomes available.

More specifically, this Interrogatory seeks the identification of communications between B&G, "and its brokers . . . agents, consultants, experts, contractors, and/or third parties" regarding the three described topics. *Id. Exhibit "A" p. 11.* The addition of the final group of "third parties" to this Interrogatory effectively broadens the field of those involved in the communications under scrutiny to virtually anyone. Further, "Communication" is broadly defined in the preface to these Interrogatories as any transfer of information whether verbal, written, electronic or other – including attempts at such transfers. *Id. Exhibit "A", p.2.*

B&G objected to this Interrogatory on multiple grounds, most notably that the question as phrased was overly broad and burdensome. The questions as phrased would require B&G to inquire of all its employees and agents if any discussions were held with virtually anyone about the three topics. This is unduly broad and burdensome.

For the reasons set forth above, it is the ORDER and RECOMMENDATION of he Special Master that VeriClaim's Motion to Compel as to Interrogatory 13 be DENIED.

**Interrogatory # 14** (Seeking identification of "all efforts" by B&G "or its brokers, agents, consultants, experts, and/or contractors" to, "differentiate" the damage done to each Property by each hurricane).

B&G objected to this Interrogatory on multiple grounds, most notably that the question as phrased was overly broad and burdensome. The questions as phrased would require B&G to respond, in part, on behalf of other entities. This is unduly broad and burdensome.

For the reasons set forth above, it is the ORDER and RECOMMENDATION of the Special Master that VeriClaim's Motion to Compel as to Interrogatory 14 be DENIED in part and GRANTED in part. B&G shall, on or before 20 days from this date, supplement its answer to this Interrogatory by describing such efforts, if any, undertaken by its own employees.

**Interrogatory #17** (Seeking the identification of all damage to each property caused by Hurricane Frances)

**Interrogatory #18** (Seeking the identification of all damage to each property caused by Hurricane Charley)

B&G objected to each of these Interrogatories in identical fashion raising objections that the inquiry is overly burdensome, seeks privileged matters, and is "premature". None of the objections raised have merit. B&G filed insurance claims for damages caused by all three hurricanes. B&G is charging the defendants, in processing those claims, inappropriately characterized damages caused by one storm (Jeanne) to those caused by another (Charlie or Frances) in order to take advantage of certain occurrence limitations in the subject insurance policy. Asking B&G to delineate the

damages it contends were actually caused by each storm is fair, appropriate, and warrants a response. (See, Order and Recommendation regarding Interrogatory #16 above).

For the reasons set forth above, it is the ORDER and RECOMMENDATION of the Special Master that VeriClaim's Motion to Compel as to Interrogatories #17 and 18 be GRANTED and B&G shall, on or before 20 days from this date, supplement its answers to such Interrogatories to respond to the questions posed.

**Interrogatory #11** (Seeking identification of every document that "allegedly supports" the contention that VeriClaim failed to properly designate losses caused by Hurricane Jeanne).

B&G objected this Interrogatory on the grounds, among others, that it invaded the work product or mental impressions of its Counsel. The question clearly goes into mental impressions and opinions of trial counsel.

For the reasons set forth above, it is the ORDER and RECOMMENDATION of the Special Master that VeriClaim's Motion to Compel as to Interrogatory #11 be DENIED.

It is the further ORDER and RECOMMENDATION of the Special Master that all other aspects of VeriClaim's Motion to Compel Production of Documents and Answers to Interrogatories by B&G that are not specifically granted herein, are DENIED.

ORDERED and RECOMMENDED this 25 day of November, 2008.

_____
Lawrence M. Watson, Jr.
Special Master

On November 25, 2008, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel:

Michael A. Shafir, Esquire
Steven J. Brodie, Esquire
Carlton Fields, PA
4000 International Place
100 SE 2nd Street
Miami, FL 331331

Amelia W. Koch, Esquire
Kent A. Lambert, Esquire
Roy C. Cheatwood, Esquire
Steven F. Griffith, Jr., Esquire
Baker Donelson, Bearman, Caldwell & Berkowitz
201 St. Charles Avenue, Suite 3600
New Orleans. LA 70170

Daniel Cramer Brown, Esquire
Carlton Fields, PA
215 S. Monroe Street
Suite 500
Tallahassee, FL 32301

Carl D. Motes, Esquire
Arnold, Matheny & Eagan, PA
605 E. Robinson Street
Suite 730
Orlando, FL 32802

John N. Ellison, Esquire
John B. Berringer, Esquire
Jeremy Hennickel, Esquire
Douglas Widin, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

Drew Williams, Esquire
Kinsey Vincent Pyle
150 S Palmetto Ave, Suite 300
Daytona Beach, FL 32114

Marvin P. Pastel, II, Esquire
Weinstock & Scavo, PC
Suite 300
3405 Piedmont Road, NE
Atlanta, GA 30305

Eric E. Caugh, Esquire
Lindsey A. Davis, Esquire
Zelle, Hofmann, Voelbel, Nason & Gette, LLP
Suite 4000
500 Washington Ave., S
Minneapolis, MN 55415

Bruce DelValle, Esquire
DelValle Law Group
Post Office Box 265007
Daytona Beach, FL 32126-5007