# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRAY & GILLESPIE MANAGEMENT LLC, BRAY**
**& GILLESPIE, DELAWARE I, L.P., BRAY &**
**GILLESPIE X, LLC, et al.**

     **Plaintiffs,**

**-vs-**              **Case No.  6:07-cv-222-Orl-35KRS**

**LEXINGTON INSURANCE COMPANY,**
**BELFOR USA GROUP, INC., BUILDING**
**CONSULTING ASSOCIATES, INC., VERICLAIM,**
**INC.**

     **Defendants.**
_____/

## SUPPLEMENT TO ORDER, NOTICE OF HEARING AND
### NOTICE OF INTENT TO TAKE JUDICIAL NOTICE OF FACTS OUTSIDE THE RECORD [351], AS AMENDED [359]

   To aid the parties and counsel in preparing for the evidentiary hearing scheduled for December 8, 2008, attached is a Preliminary Statement of Adjudicative Facts that the Court considers relevant.  It is not necessarily a complete statement of the facts the Court will consider, nor is it a finding as to any fact.  Findings of fact will be made following the submission of any additional evidence and argument during the hearing.

   **DONE** and **ORDERED** in Orlando, Florida on December 3, 2008.

            *Karla R. Spaulding*
           KARLA R. SPAULDING
          UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Any Unrepresented Party
Special Master

**PRELIMINARY STATEMENT OF ADJUDICATIVE FACTS**

1.      John Ellison, a partner-level attorney at Anderson Kill & Olick, P.C. ("AKO"), has been counsel of record for B&G since the inception of the present case.  He joined Reed Smith in January 2008.  Ellison Decl., Doc. No. 339-2 ¶ 24.  As of May 9, 2008, Ellison was lead counsel for B&G in the present case and began actively participating in discovery issues. Doc. No. 192 at 7.

2.      In May 2006, B&G gathered all information about its properties that were damaged during the 2004 hurricanes. B&G downloaded e-mails (and possibly other electronically stored information) in native format, converted other information to digital format, and copied all of this collected data onto an external hard drive (the "Target Hard Drive").  *See* Carlock Dep., Doc. No. 380-8 at 46-50, 55-56, 72-73; Lueken Dep., Doc. No. 345-3 at 98; *see also* Nalley Decl., Doc. No. 235-2 ¶ 6; Heinnickel Decl., Doc. No. 339-3 ¶ 4.

3.      William Pillsbury, an associate attorney with AKO, carried the Target Hard Drive to the AKO offices. The original information copied to the hard drive remained in the possession of B&G.  Pillsbury Dep., Case No. 6:07-cv-326-Orl-DAB (the "Hartford Case"), Doc. No. 171-4 at 103-07.

4.      AKO used Extractiva software to convert the electronic data on the Target Hard Drive to TIFF images with associated metadata.  The TIFF images and associated metadata were then put into AKO's Introspect database. Filters may have been applied to exclude some metadata that the Extractiva software captured, including metadata that could be used to link the TIFF images to the electronic data in native format on the Target Hard Drive. Pillsbury Dep., Doc. No. 171-4 at 106; Heinnickel Decl., Doc. No. 339-3 ¶ 4; Martinez Decl., Doc. No. 339-2 ¶¶ 5, 17-18.  AKO also created an OCR text searchable database of the information on the Target Hard Drive. Berringer Testimony, Doc. No. 330 at 165-66.

5.      Attorneys at Reed Smith and at Boies Schiller, formerly local counsel for B&G in the present case, had knowledge of both the content and format of information stored on the Introspect database, as well as remote access to it. Specifically, from September through November 2007, Matthew Rosso, then an associate attorney at AKO who joined Reed Smith in January 2008, reviewed the Introspect database to determine whether information contained therein related to the Hartford Case was privileged.  Rosso Testimony, Hartford Case, Doc. No. 160 at 25-26, 31.  In April 2008, Michael DiCanio, an associate attorney at Reed Smith, was granted remote access to the Introspect database for use in the state court case involving Belfor and B&G.  Pillsbury Dep., Hartford Case, Doc. No. 170-2 at 15; DiCanio Testimony, Hartford Case, Doc. No. 160 at 57. Sometime before June 3, 2008, attorneys at Boies Schiller also had remote access to the Introspect database and used it to prepare a privilege log.  *See* Doc. No. 238 at 88.

6.      Bruce DelValle, outside counsel for B&G who subsequently became in-house counsel for B&G, was aware at least by March 28, 2008, that AKO had received some B&G information "in digital format."  Doc. No. 182-2. DelValle entered a notice of appearance as counsel for B&G in the present case on May 30, 2008.  Doc. No. 209.

7.     DelValle and John Berringer, a partner-level attorney at Reed Smith, learned on April 9, 2008, during a deposition of Harold Lueken, that B&G had downloaded and electronically transferred information to AKO in May 2006.  Lueken Dep., Hartford Case, Doc. No. 120-9 at 38-39 (DelValle and Berringer attended the deposition).

8.     AKO provided Reed Smith information about the method in which information was produced by B&G and the manner in which it was processed and stored when such information was requested.  Specifically, as discussed above, in April 2008, AKO provided a Reed Smith attorney with remote access to the Introspect database.  On June 10, 2008, Frank Martinez, a litigation support analyst with Reed Smith, talked with a technology specialist at AKO regarding the Introspect database and the correlation between TIFF images and the information in native format.  Doc. No. 222-2.  Sometime before June 25, 2008, Berringer tasked Jeremy Heinnickel, an associate attorney with Reed Smith, to contact AKO to gather information about the information production.  Berringer learned that B&G put electronic data, including e-mail in native format, on a hard drive which was converted by AKO to a TIFF database with some metadata.  Berringer also learned that AKO had created an OCR database with a text searchable version of the information. Berringer Testimony, Doc. No. 330 at 165-66.  On and after June 26, 2008, Heinnickel and Martinez continued to have discussions with AKO to locate the Extractiva database. *See* Martinez Decl., Doc. No. 339-4; Heinnickel Decl., Doc. No. 339-3.  On July 29, 2008, Pillsbury testified about B&G's initial production and processing of the information electronically as a Rule 30(b)(6) representative for B&G in the Hartford Case.  Pillsbury Dep., Hartford Case, Doc. No. 171-2. Pillsbury also provided information to Reed Smith that was communicated to Matt Carlock about the initial production by B&G for purposes of Carlock's testimony as a Rule 30(b)(6) representative of B&G in the present case.  Doc. No. 380-8 at 74, 84.

9.     In early June 2008, Reed Smith received a copy of the Target Hard Drive from AKO. Berringer Testimony, Doc. No. 330 at 167.

10.    Before the June 25, 2008 hearing, B&G and Reed Smith did not advise counsel for Lexington and Belfor that earlier representations that B&G had printed electronically stored information and then scanned it were incorrect.  Specifically, on May 21, 2008, partner-level attorneys at Reed Smith reiterated the representation that electronically stored information was printed and then scanned.  *See* Doc. No. 234-4; Brown Testimony, Doc. No. 330 at 143. On June 20, 2008,  Berringer told counsel for Lexington and Belfor that there was a database that contained metadata, but the actual contents of the database were not disclosed.  Teshima Testimony, Doc. No. 330 at 82; *see also* Heinnickel Decl., Doc. No. 339-3 ¶ 5. Berringer did not reveal to counsel for Lexington and Belfor B&G's receipt of the Target Hard Drive or cause it to be examined before the June 25, 2008 evidentiary hearing.  Berringer Testimony, Doc. No. 330 at 170.