# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRAY & GILLESPIE MANAGEMENT LLC, BRAY & GILLESPIE, DELAWARE I, L.P., BRAY & GILLESPIE X, LLC, et al.**
        **Plaintiffs,**

**-vs-**  Case No. 6:07-cv-222-Orl-35KRS

**LEXINGTON INSURANCE COMPANY,**

        **Defendants.**
_____/

## ORDER

This cause came on for consideration after oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT OF CCA, FOR ALTERNATIVE RELIEF AND REQUEST FOR EXPEDITED HEARING AND ORAL ARGUMENT (Doc. No. 478)** |
| **FILED:** | **March 20, 2009** |

| | |
|---|---|
| **MOTION:** | **SUPPLEMENT TO DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFFS' EXPERT REPORT OF CCA FOR ALTERNATIVE RELIEF AND REQUEST FOR EXPEDITED HEARING AND ORAL ARGUMENT (Doc. No. 478)** |
| **FILED:** | **March 25, 2009** |

| MOTION: | SECOND SUPPLEMENT TO DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION TO STRIKE PLAINTIFFS' EXPERT REPORT OF CCA, FOR ALTERNATIVE RELIEF AND REQUEST FOR EXPEDITED HEARING AND ORAL ARGUMENT (Doc. No. 511) |
|---|---|
| FILED: | April 16, 2009 |

## I. BACKGROUND.

In this action, Plaintiffs Bray & Gillespie Management, LLC, *et al.* (collectively "B&G") allege that Defendants Lexington Insurance Company ("Lexington") failed to reimburse B&G under a Commercial Property Policy for damages done to B&G-owned properties during the 2004 hurricane season. Doc. No. 99 at 2-4, 6-7 & n.5.

In the Amended Case Management and Scheduling Order entered by the Court on November 13, 2007, B&G was required to disclose its expert reports by February 13, 2009, and Lexington was required to disclose its expert reports by February 27, 2009. Doc. No. 122. The order set May 15, 2009, as the deadline for expert discovery. *Id.* On January 7, 2009, the Court extended the expert report deadlines to March 16, 2009, for B&G and March 30, 2009, for Lexington, and left the expert discovery deadline unchanged. Doc. No. 442. On March 16, 2009, B&G served its expert report of Construction Consulting Associates, LLC ("CCA"). *See* Doc. No. 478 at 1; Doc. No. 491 at 4.

After receiving the CCA report, Lexington filed the present motion to strike the report and preclude testimony at trial from CCA. Doc. No. 478. B&G responded to the motion. Doc. No. 491. The Court heard oral argument on the motion to strike on April 2, 2009. Thereafter, the Court provided B&G with an opportunity to supplement or amend the expert witness report to conform to

the requirements of Fed. R. Civ. P. 26(a)(2)(B), which supplemental or amended report was to be served and filed no later than 4:00 p.m. April 10, 2009. Doc. No. 496 at 2.[1]

At 3:45 p.m. on April 10, 2009, B&G filed a motion for leave to serve the attachments to the supplemental or amended report on computer discs, which motion was granted. Doc. Nos. 502, 505. In the motion, B&G represented that counsel for Lexington had agreed to receive the discs by express delivery on April 13, 2009. Doc. No. 502 at 2. B&G filed the amended report of CCA dated April 10, 2009 (the "April 10 CCA Report"), and computer discs with the Court on April 13, 2009. Doc. Nos. 506-07. Thereafter, pursuant to my Order, B&G filed a summary of the changes made to the original CCA report. Doc. No. 508.

On April 16, 2009, also pursuant to my Order, Lexington filed its second supplement to the motion describing its continuing objections to the April 10 CCA Report. Doc. No. 511. Lexington related a series of good faith conferences between its counsel and counsel for B&G regarding problems with the April 10 CCA Report and the supporting computer discs. In response to these conferences, B&G's counsel produced additional information from CCA and other clarifications as discussed in the attachments to the second supplement.

Following receipt of this additional supplemental information and clarification, Lexington renewed its request that the Court strike B&G's pleadings based on the continuing pattern of discovery violations. Doc. No. 511 at 9. Alternatively, it asked that the Court strike the "programming opinions" of CCA, set forth beginning in the last paragraph on page 7 of the April 10 CCA Report

---

[1] The expedited supplementation and amendment was necessary for the Court to rule on the motion in sufficient time to permit Lexington to depose CCA should the Court deny the motion.

through the next to the last paragraph on page 11 of that report. With respect to the remainder of the April 10 CCA Report, Lexington wrote as follows:

> While this portion of the report remains non-compliant, its non-compliance is less blatant and less prejudicial. Lexington has reasonable confidence that it can discern from those pages, in conjunction with Exhibits 2 and 3 of the original CCA report, most of the information CCA considered and relied on for CCA's "apportionment" opinions and "Treasure Island damage" opinions, and CCA's "basis and reasons" for those opinions – at least sufficiently to take an intelligent deposition of CCA on those points. Lexington does not ask for further relief as to these opinions and these portions of the CCA report, as supplemented.

Doc. No. 511 at 4 n.1.

## II. APPLICABLE LAW.

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." The disclosure "must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involves giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The report must contain the following:

> (I) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> > (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> > (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id*. The disclosures must be made "at the times and in the sequence that the court orders," and the parties must supplement the disclosures when required by Rule 26(e). Fed. R. Civ. P. 26(a)(2)(C), (D); *accord* Middle District Discovery (2001) at 9.

"'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written expert report containing 'a complete statement of all opinions' and 'the basis and reasons therefore.'" *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)(citing Fed. R. Civ. P. 26(a)(2)(B)). "Expert reports must not be sketchy, vague or preliminary in nature and the disclosure must not be used as a means to extend a discovery deadline." *Dyett v. N. Broward Hosp. Dist.*, No. 03-60804-CIV, 2004 WL 5320630 at *1 (S.D. Fla. Jan. 1, 2004); *see also* Fed. R. Civ. P. 26(a)(2) Advisory Comm. Notes (1993).

Compliance with Rule 26 is "'not merely an aspiration'" as "'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise....'" *Reese*, 527 F.3d at 1266 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006)). "[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese*, 527 F.3d at 1265. "Additionally, an expert report must be complete 'such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be

sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Dyett*, 2004 WL 5320630, at * 1.

Rule 37(c)(1) states that if a party fails to identify an expert witness or provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "[A] party's failure to properly disclose an expert witness is harmless when no prejudice results to the opposing party." *Weaver v. Lexington Ins. Co.*, No. 8:05-cv-1913-T-27TBM, 2007 WL 1288759, at *2 (M.D. Fla. May 2, 2007). In addition to or instead of this sanction, the Court may impose other, less severe sanctions for a party's failure to comply with Rule 26(a). Fed. R. Civ. P. 37(c)(1).

### III. ANALYSIS.

*A. Compliance with Rule 26(a)(2)(B).*

As discussed above, Lexington's argument now focuses on the CCA's failure to identify the bases and reasons for its "programming opinions" and the data or other information it considered in forming those opinions.

With respect to the data or other information considered, the April 10 CCA Report refers to interviews with unnamed B&G employees, staff, and consultants, the substance of which is not stated. April 10 CCA Report at 1-2. It also refers to conferences with B&G in-house counsel Bruce DelValle and Erin Thompson and counsel staffer Katherine Martin, again without disclosing the substance of the conferences. *Id.* at 2. It names others with whom CCA talked and describes the discussions in only broad generalities, as follows:

> CCA also conferred with B&G manager Kent Hricko, who provided
> information about Treasure Island property appraisals. . . . Mr. Connors

> discussed his site reports for Treasure Island with CCA. CCA also met with Mr. Bray and Mr. Gillespie, who provided background information on the facilities and the insurance claims.

*Id.* at 2.

With respect to its conferences with other experts, CCA appears to disclose some but not necessarily all of the individuals with whom it conferred. April 10 CCA Report at 1 ("CCA conferred with other experts retained by B&G in this matter *including* Marvin Milton . . . , Stan Johnston . . . , Alan Lougheed . . . , and KMI employees John Manning, John Becker, and Paul Knopf.")(emphasis added). CCA indicates that it discussed with the experts technical issues and relevant documents incorporated in CCA exhibits. *Id.* at 2. It is unclear, however, whether these discussions include information not expressed by these experts in their respective written reports.

As discussed during oral argument on the motion, an expert must disclose all of the data and information he considered in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). When this data and information is in the form of conferences or interviews, the expert must disclose the substance of those conferences and interviews in order for opposing parties to be fully informed regarding all of the information considered. *See Smith v. Jacobs Eng'g Group, Inc.*, No. 4:06-cv-496-WS/WCS, 2008 WL 4264718, at *5 (N.D. Fla. Mar. 20, 2008), *Report and Recommendation adopted,* 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008). Despite the express admonition from the Court, including citation to the *Smith* decision during the oral argument, CCA did not provide the identities of all the individuals interviewed and consulted, or the substance of the discussions with identified and unidentified individuals. This violates Rule 26(a)(2)(B)(ii).

The failure to disclose this information undermines the "programming opinions" in the April 10 CCA Report because CCA did not clearly state the "basis and reasons" for those opinions. As Lexington argues, this portion of the report reflects, among other things, that "[m]embers of the construction team *were also identified* as part of the 'adjusting team'. . . ," April 10 CCA Report at 8, "[t]he Owners representative, KMI, acting in an advisory and consulting capacity to B&G, raised numerous concerns *verbally* and in writing . . . ," *id.* at 9 (emphasis added), "CCA opines, *based on the evidence*, that BCA, and not KMI, had substantive authority . . . ," *id.* (emphasis added), "BCA was *held out* as a construction consultant capable of identifying the scope of work required . . . ." *id.* at 11 (emphasis added). Generalizations like these coupled with the failure to disclose the substance of information obtain by CCA through interviews and conferences are too vague to permit Lexington to prepare adequately to cross-examine CCA or for its experts to address the factual premises on which CCA's programming opinions are based. As such, Lexington has been prejudiced.

Fact discovery in this case has closed. B&G had ample notice that it was required to disclose the substance of all information obtained orally as part of the data and information considered, and that CCA was required to state the basis and reasons for its opinions. The Court took the extraordinary step of giving B&G a final opportunity to amend or supplement the report to bring it into compliance with Rule 26. Even after the April 10 CCA Report was served, Lexington gave B&G additional opportunities to amend or supplement its report to bring it into compliance with Rule 26. Despite these opportunities, B&G failed to do so. Under these circumstances, B&G's failure to comply with Rule 26 is not substantially justified. Because Lexington has been prejudiced, the failure to comply with the rule is not harmless.

*B.     Sanctions.*

Lexington argues that B&G's pattern of discovery abuses in this case, including the present failure to comply with Rule 26(a)(2)(B), warrants the drastic sanction of striking B&G's amended complaint. I have previously addressed in some detail the discovery misconduct in this case. *See, e.g.,* Doc. Nos. 325, 349, 460. Nevertheless, the United States Court of Appeals for the Eleventh Circuit "has held that while district courts 'have broad powers under the rules to impose sanctions for a party's failure to abide by court orders, dismissal is justified only in extreme circumstances and as a last resort.'" *Weaver*, 2007 WL 1288759, at *2 (quoting *Wouters v. Martin County, Fla.,* 9 F.3d 924, 933-34 (11th Cir. 1993)). As Lexington has withdrawn some of its objections to the CCA expert report, as amended, striking B&G's pleadings is not appropriate at this time.

Rule 37(c)(1) provides a self-executing sanction for failure to make the disclosures required by Rule 26(a) when the failure was not substantially justified or harmless. It provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." Because B&G failed to disclose all of the data and information upon which CCA relied to support its programming opinions and the basis and reasons for those opinions, B&G will not be allowed to rely on those opinions or the testimony of CCA, through Mark McGivern, Kenneth Quigley, Robert Pfeifer, or others, regarding the programming opinions for any purpose in this case.

## IV. CONCLUSION.

B&G's expert report from CCA failed to comply with Fed. R. Civ. P. 26(a)(2)(B). The failure was neither substantially justified nor harmless. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, it is **ORDERED** that Lexington's Motion to Strike Plaintiffs' Expert Report of CCA, Doc. No. 478, is **GRANTED** in part. The "programming opinions" stated from the last paragraph on page 7 of the April 10 CCA Report through the next to the last paragraph of page 11 of that report are **STRICKEN**. B&G may not cite or rely upon that portion of the report, or testimony or evidence of CCA, through Mark McGivern, Kenneth Quigley, Robert Pfeifer, or others, related thereto during this case.

**DONE** and **ORDERED** in Orlando, Florida on April 17, 2009.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE