**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRAY & GILLESPIE MANAGEMENT**
**LLC, BRAY & GILLESPIE, DELAWARE I,**
**L.P., BRAY & GILLESPIE X, LLC, et al.**
　　　　**Plaintiffs,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:07-cv-222-Orl-35KRS**

**LEXINGTON INSURANCE COMPANY,**

　　　　**Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION FOR RULE 37 DISCOVERY SANCTIONS (TREASURE ISLAND ROOM FOLIOS) (Doc. No. 526)
>
> **FILED:** May 22, 2009

In the present motion, Defendant Lexington Insurance Company ("Lexington") seeks an order pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), striking the amended complaint filed by Plaintiffs Bray and Gillespie companies ("B&G") and dismissing this action with prejudice, based on B&G's continuing flagrant disregard of its responsibilities to produce documents, including electronically stored information ("ESI"), in discovery as required by the Federal Rules of Civil Procedure and by this Court's orders.[1] The history

---

[1] Lexington requested, in the alternative, nondispositive relief with respect to B&G's most recent discovery violation. I granted the nondispositive relief by separate order. In this Report and Recommendation, I explain why the nondispositive relief

of B&G's repeated disobedience of Court orders is set forth in detail in the following orders, which I incorporate herein by reference:

1. Order dated April 11, 2008, Doc. No. 181 (the "April 11 Order");

2. Oral order issued on June 25, 2008, Doc. No. 330 at 195-98 (the "June 25 Order"), as affirmed, Doc. No. 256;

3. Order dated September 22, 2008, Doc. No. 325 (the "September 22 Order");

4. Order dated January 7, 2009, Doc. No. 442 (the "January 7 Order");

5. Order dated March 4, 2009, Doc. No. 460 (the "March 4 Order");

6. Order dated August 3, 2009, Doc. No. 576 (the "August 3 Order").[2]

As set forth in detail in the March 4 Order and the August 3 Order, throughout this litigation B&G and its counsel have failed to make reasonable efforts to search for and produce documents, including ESI, in response to Court orders. B&G's counsel have repeatedly misrepresented to the Court and opposing counsel what was in B&G's possession, what searches B&G had made for responsive documents, and the extent to which B&G had produced all documents responsive to the Court's orders. The totality of this misconduct demonstrates that B&G, through its counsel, acted willfully and in bad faith in violation of the Federal Rules of Civil Procedure and this Court's orders.

---

previously granted to Lexington is insufficient to remedy the prejudice B&G's actions have caused Lexington and to insure the integrity of the discovery process.

[2] Some of these orders are lengthy, because I described in detail B&G's discovery misconduct. Accordingly, I will not attempt to recite the extensive facts and findings contained in those orders in this Report and Recommendation.

The most recent example of B&G's continuing callous disregard of the Court's orders is set forth in detail in the August 3 Order.  In sum, in the January 7 Order, I required that the parties supplement their production of documents responsive to written discovery requests and Court orders on or before January 30, 2009, as required by Fed. R. Civ. P. 26(e).  Doc. No. 442 at 2.  I further ordered that any additional responsive documents or information learned after January 30, 2009, be produced within five business days after the documents and information were received by counsel.  *Id.* at 2-3.

In the April 11 Order and the June 25 Order, I required B&G to produce all documents, including ESI, responsive to, among other requests, Lexington's Request for Production 97, *see* Doc. No. 202-2 at 31,[3] which called for production of room folios for guests who stayed at B&G properties allegedly damaged by the hurricanes that passed through central Florida in 2004.[4]  One of those allegedly damaged properties was the Treasure Island Resort ("Treasure Island").  As detailed in the August 3 Order, B&G and its counsel were aware that the room folios were maintained in the ordinary course of business in electronic storage in B&G's property management system, IQWare.

---

[3] To the extent that the pagination assigned when documents were electronically filed differs from the internal pagination of the documents, I will cite to the internal pagination.

[4] B&G argued that each of three hurricanes that passed through central Florida in August and September 2004 damaged various of its properties.  Hurricane Charley made landfall on August 13, 2004; Hurricane Frances made landfall on September 4, 2004; Hurricane Jeanne made landfall on September 26, 2004. Lexington has paid the insurance policy limits for damages caused by Hurricanes Charley and Frances.  Thus, the only remaining dispute is whether B&G can establish that further compensable damage was caused by Hurricane Jeanne.

Nonetheless, B&G failed to search for or produce the room folios for Treasure Island within the time required by my orders.

Beginning in mid-to-late-December 2008, B&G finally searched IQWare for Treasure Island room folios, but only after Lexington's counsel told B&G's counsel that it could not find Treasure Island room folios in B&G's earlier document productions. On January 9, 2009, B&G produced to Lexington Treasure Island room folios it located in IQWare. B&G did not make any effort to confirm that these were all of the responsive Treasure Island room folios in its possession, however.

B&G and its counsel's stubborn defiance of the Court's orders continued unabated even after the finding in the March 4 Order that some of B&G's counsel acted in bad faith. B&G, through its counsel, deliberately and deceitfully withheld until after the close of all discovery Treasure Island room folios that were always in B&G's possession, some of which B&G's counsel received on May 4, 2009, in order to gain an unfair strategic advantage against Lexington. This deliberate and deceitful conduct – which violated three Court orders – deprived Lexington of the opportunity to conduct discovery regarding the belatedly disclosed Treasure Island room folios and deprived Lexington's business interruption losses expert, Peter Fogarty, from considering the belatedly disclosed Treasure Island room folios in formulating his expert opinions. Lexington has filed a dispositive motion, to which B&G has responded. Trial is scheduled for November 2009. At this stage of the proceedings, B&G's misconduct has incurably prejudiced Lexington's ability to defend this case.

In light of the continued pattern of defiance of the Court's discovery orders, neither Lexington nor the Court can have any confidence that B&G has produced all documents and information in its possession, custody and control as requested by Lexington and as ordered by the Court.

Fed. R. Civ. P. 16(f)(1)(C) gives the Court the authority to enforce its pretrial orders upon motion or *sua sponte*. Fed. R. Civ. P. 37(b)(2) sets forth the sanctions that the Court may enter to address violations of its discovery orders. "Dismissal with prejudice is the most severe Rule 37 sanction and is not favored. . . . But, dismissal may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault." *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). The appropriate sanction to impose must be determined in the Court's sound discretion. *Id.*

In *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976), the United States Supreme Court affirmed the sanction of dismissal with prejudice in a case in which the plaintiffs failed to answer crucial interrogatories despite numerous extensions of time and several admonitions of the Court. *Id.* at 640. The Court of Appeals had overturned the District Court's finding of bad faith, accepting the plaintiffs' argument that "none of the parties had really pressed discovery" and that the new attorney the plaintiffs retained during the litigation "encountered difficulties in obtaining some of the requested information." *Id.* at 641.

The Supreme Court reversed the Court of Appeals decision and affirmed the decision of the District Judge, holding as follows:

> If the decision of the Court of Appeals remained undisturbed in this case, it might well be that [t]hese respondents would faithfully comply with all

> future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts. Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' "flagrant bad faith" and their counsel's "callous disregard" of their responsibilities.

*Id.* at 643.

Similarly, the United States Court of Appeals for the Eleventh Circuit upheld dismissal with prejudice when a plaintiff repeatedly violated orders of a magistrate judge compelling it to respond to interrogatories in *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480 (11th Cir. 1982). The Court stated that "[w]hen a party demonstrates a flagrant disregard for the court and the discovery process, . . . dismissal is not an abuse of discretion." *Id.* at 481. The Court further noted, relying on *National Hockey League*, the "institutional values Rule 37 is designed to protect. Rule 37 sanctions are imposed not only to prevent unfair prejudice to litigants but also to insure the integrity of the discovery process." *Id.* at 482.

In *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993), the Eleventh Circuit upheld a default judgment sanction under Rule 37 where "defendants stubbornly withheld discoverable information by improperly objecting to interrogatories and by providing only partial responses to the interrogatories they answered." *Id.* at 1539. The defendants and their attorneys

> engaged in an unrelenting campaign to obfuscate the truth. They improperly objected to interrogatories in order to avoid revealing information; the answers they did give were incomplete and unreasonably narrow; they delayed (either deliberately or carelessly) complying with the

> Magistrate Judge's orders to produce deposition transcripts; and they never produced [certain] information as ordered.

*Id.* at 1544.  The Eleventh Circuit cited to the District Court's orders compelling the defendants to produce information, the defendants' refusal to reveal some of the discoverable information, and the defendants' violation of three clear orders.  *Id.* at 1543. The Court found that neither defendant had given a credible explanation of why it believed the discovery orders did not require disclosure of the withheld information, and neither defendant asked the District Judge to clarify the orders.  *Id.*  The Court found that the defendants had been given ample notice of the Court's orders, ample opportunity to comply with them, and ample opportunity to show a legitimate excuse for failing to comply in the face of the possibility that the Court would enter a default judgment if the defendants did not comply with their obligations.  *Id.* at 1543-44.  Under these circumstances, the Eleventh Circuit found that "the defendants richly deserved the sanction of a default judgment."  *Id.* at 1542.

Finally, in *Phillips v. Insurance Co. of North America*, 633 F.2d 1165 (5th Cir. Unit B 1981), the United States Court of Appeals for the Fifth Circuit upheld a dismissal sanction under Rule 37 when the plaintiff failed multiple times to obey a court order, even though the plaintiff produced the responsive document after the motion for sanctions was filed.[5]  The district court found the plaintiff's "'recalcitrance . . . was not based on factors beyond his control'" and must be characterized as "'flagrant disregard' and 'willful disobedience.'"  *Id.* at 1167 (internal citation omitted).  On appeal, the plaintiff argued that

---

[5] "Unit B" decisions of the Fifth Circuit are binding precedent in the Eleventh Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

his "actions were in good faith," that "[he] did not intentionally disregard the order compelling discovery" as shown by his belated production of the document, and that the district court's "order compelling discovery was not explicit enough." *Id.* The Court of Appeals "[did] not hesitate to reject these contentions," noting that "an appellant so imbued with good faith as this one claims to have been" should have been inspired to resolve the matter informally with opposing counsel or "to consult the district court for direction" rather than simply disobeying the court's order. *Id.* The Court of Appeals also found that because the plaintiff "necessitated judicial intervention into the discovery process by his own disobedience, [his] ultimate tender of the [document at issue] after the Rule 37 motion was filed is of little consequence." *Id.*

B&G and its counsel have repeatedly demonstrated that they will not comply with their obligations under the orders of this Court and the Federal Rules of Civil Procedure. B&G's actions were not the result of negligence, misunderstanding, or an inability to comply with the Court's Orders, for the reasons stated in the June 25, September 22, March 4, and August 3 Orders. The Court has imposed multiple sanctions less severe than dismissal, but B&G and its counsels' flagrant disregard of their obligations has continued.

B&G's unrelenting campaign to thwart Lexington's legitimate discovery efforts has caused significant, incurable prejudice to Lexington as explained in my August 3 Order. Nondispositive sanctions imposed by the Court have not been effective to induce B&G and its counsel to comply with the Federal Rules of Civil Procedure and this Court's Orders. Accordingly, this is a case in which the drastic sanction of dismissal with

prejudice should be imposed on B&G, not only to remedy the unfair prejudice to Lexington but also to uphold the integrity of the discovery process by warning other parties and their counsel that willful disregard of their responsibilities under the Federal Rules of Civil Procedure and Court orders will not be tolerated.

Based on the foregoing, including the prior orders[6] incorporated herein by reference, I respectfully recommend that the Court do the following:

1. **GRANT** Lexington Insurance Company's Motion for Rule 37 Sanctions (Treasure Island Room Folios), Doc. No. 526;

2. **STRIKE** B&G's amended complaint, Doc. No. 13, pursuant to Fed. R. Civ. P. 16(f)(1)(C) and Fed. R. Civ. P. 37(b)(2)(A)(iii);

3. **DISMISS** the case **WITH PREJUDICE** pursuant to Fed. R. Civ. P. 16(f)(1)(C) and Fed. R. Civ. P. 37(b)(2)(A)(v), and thereafter **DIRECT** the Clerk of Court to close the file; and

4. **PERMIT** Lexington to file a Bill of Costs and motion for attorney's fees, if authorized by contract, statute or rule, within the time permitted by the rules of the Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 3, 2009.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[6] *See supra* at 2 (listing six specific Orders).