UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BRAY & GILLESPIE MANAGEMENT, LLC,**
et al.,

    Plaintiffs,

v.                                               Case No.: 6:07-cv-0222-Orl-35KRS

**LEXINGTON INSURANCE COMPANY,**

    Defendant.
_____/

## ORDER

An evidentiary hearing was held in this case on Thursday, December 3, 2009, at which the Court heard the parties' oral arguments on (i) Defendant's pending Motion for Sanctions (Dkt. 526), filed on May 22, 2009, (ii) two Reports and Recommendations (Dkts. 576, 578), issued by the United States Magistrate Judge on August 3, 2009, recommending that Defendant's Motion for Sanctions be granted and a series of sanctions be entered against the Plaintiff, and (iii) a litany of supplements and responses filed in support or objection to the Motion and the Reports and Recommendations. (Dkts. 529, 530, 532, 569, 575, 586, 587, 602-04, 606-08, 621, 624-27, 630, 638).

**I.**     **Standard of Review**

After conducting a careful and complete review of the findings and recommendations,

a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982), *cert. denied,* 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." <u>Jeffrey S. v. State Bd. of Educ.</u>, 896 F.2d 507, 512 (11th Cir.1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)). Even in the absence of specific objections, there is no requirement that a district judge review factual findings *de novo,* <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. See <u>Cooper-Houston v. Southern Ry.</u>, 37 F.3d 603, 604 (11th Cir. 1994).

Federal Rule of Civil Procedure 37 allows the imposition of sanctions against a party for failure to make proper disclosure in discovery. Rule 37(b),(c) provide, in relevant part:

> (b) Failure to Comply with a Court Order.
>
> . . . .
>
> (2) Sanctions in the District Where the Action Is Pending.
>
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing

> designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . . .
>
> (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.
>
> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>
> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(b),(c).

In the Eleventh Circuit, pursuant to Rule 37, the district courts hold broad discretion to impose sanctions against litigants or their counsel, to include the imposition of monetary sanctions and, when appropriate, dismissal of a claim or responsive pleading. BankAtlantic

v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048-49 (11th Cir. 1994). A district court's act of imposing sanctions pursuant to Rule 37 implicates the Due Process Clause of the Fifth Amendment, and so, to ensure a sanction of fees is "just," the Record must reflect that the sanctioned party was previously on notice of the necessity to produce the discovery in question. Id. at 1050. A finding of bad faith or willfulness on the part of the sanctioned party is necessary only when a court imposes the most severe sanction of default or dismissal. Id. at 1049. When contemplating dismissal, a district court must consider "whether a less drastic but equally effective remedy could have been fashioned." Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 481 (11th Cir. 1982). Dismissal of a plaintiff's complaint is considered an extreme remedy and should not be imposed if lesser sanctions will suffice. Navarro v. Cohen, 856 F.2d 141, 142 (11th Cir. 1988). "When a party demonstrates a flagrant disregard for the court and the discovery process, however, dismissal is not an abuse of discretion." Aztec Steel Co., 691 F.2d at 481. Finally, Rule 37 is designed to protect a court's institutional values. Id. at 482. "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process," id, and thus the court is encouraged to consider whether the sanctioned party's conduct would cause "'other parties to . . . feel freer than . . . Rule 37 contemplates they should feel to flout other discovery orders of other District Courts.'" Id. (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976)).

## II. Analysis

### A. Dispositive Sanction

Defendant's pending Motion for Sanctions predominantly concerns the production of

records or "folios" of each guest's stay at Plaintiff's Treasure Island Resort Property. The "Treasure Island room folios" are essentially compilations of data from various points of sale in and around the Property documenting a guest's stay and use of the hotel facilities. They can be used to determine, inter alia, whether a room was rented to a guest in the normal course of business at the Treasure Island Resort Property or whether the room was used to house personnel in relation to post-hurricane repair efforts. It is undisputed that the Treasure Island Resort Property and surrounding area was hit successively by Hurricanes Charley, Frances, and Jeanne in 2004. The Plaintiff's demand for recovery for business interruption losses allegedly caused by Hurricane Jeanne requires Plaintiff to prove that Treasure Island Resort was operating in the normal course of business after sustaining damage from Hurricane Frances in 2004. Defendant contends that normal business operations had largely ceased after the Treasure Island Resort was damaged by Hurricane Frances and that the majority of occupants at the Resort after Hurricane Frances were not transient guests in the normal course of business.

In this case, since at least August 2007, Defendant has made repeated requests to Plaintiff to produce all Treasure Island room folios at issue. (Dkt. 576 at 35). Since April 2008, the Court has issued three orders clearly and unambiguously compelling production of all room folios. Further, Plaintiff has had reason to know of the importance of the room folios to Defendant since the report of Defendant's expert, Peter Foggarty, CPA, CFE, was disclosed to Plaintiff on or about March 30, 2009. The last extended period of fact discovery closed in this case on February 27, 2009. (Dkt. 327, ¶ 1; Dkt. 576 at 19). As of March 30, 2009, Plaintiff had produced certain Treasure Island room folios that suggested that most of the Treasure

Island rooms leased between Hurricane Frances and Hurricane Jeanne were leased to hurricane "responders," such as persons affiliated with the local power company or construction contractors, not to standard transient guests. Accordingly, using the room folios produced as of March 2009 for support, Defendant's expert opined that Plaintiff's allegations of business interruption losses stemming from Hurricane Jeanne are exaggerated. It was not until May 14, 2009, that Plaintiff, during the deposition of Defendant's expert, first disclosed the existence of certain Treasure Island room folios that might be used to contest the Defendant's expert's theory. Upon reviewing Defendant's expert report and noting discrepancies in the folio information and certain available spread sheets related to room revenue, Plaintiff claims it realized that additional folios had to have been generated. Plaintiff again undertook a search for folios and discovered hard copies of additional folios in boxes of files that had been sent to storage but that had never been searched.

Plaintiff's initial explanation for the disproportionate representation of hurricane responders among the initial batch of computer generated Treasure Island room folios produced in January 2009 was that room folios for all Treasure Island Resort guests were normally archived six months after the guest's stay as an automatic function of Plaintiff's computerized accounts management system and filing software, termed "IQ Ware," and that only certain room folio files had been preserved in hard copy. However, this did not fully explain why the responders' folios would be available and another guest's folio would not be not be available if the two stayed at the Resort in the same time period or why the responders' computer generated folios were available in disproportionately greater numbers. Plaintiff has subsequently learned that folios of guests whose room accounts were not paid in full at the

time of check out remained open and were never archived. Plaintiff has additionally learned that if a guest was staying at the Resort as part of a group, such as a construction crew with a single account, that guest's folio would remain open and not be archived unless the entire group account was paid in full at the time of check out.

In any event, IQ Ware's automatic archiving procedure, once disclosed, implicated issues of spoliation in light of Plaintiff's duty to preserve records and to cease and desist all non-retrievable archiving upon notice of suit or receipt of a preservation letter. With this concern in mind, prior to the Evidentiary Hearing, Plaintiff's most recent substitute counsel, with the assistance of Plaintiff's computer forensics expert, made a simple telephone call to the software provider and reviewed the IQ Ware computer software system used to capture and produce room folios for the Treasure Island Resort Property and learned two significant and incredible facts. First, Plaintiff, despite all previous demands and court orders for this discovery and despite being under threat of having its entire case dismissed and its counsel severely sanctioned, had never even consulted its software provider to attempt to retrieve the archived documents. Second, the archived files are likely retrievable with minimal effort and at minimal expense and could likely render all folios available for review for the relevant time period – some two years and four months after they were first requested for production by Defendant in discovery and some twenty months after Plaintiff was *first* ordered by the Court to search thoroughly for and disclose the folio files. Thus, on December 3, 2009, during the Evidentiary Hearing, Plaintiff for the first time disclosed the likely existence of additional Treasure Island room folios and asked that it be allowed, without sanction, again, to cure its abject failure to make complete review and production, claiming that the folios can likely be

produced if discovery is, now on the eve of trial, reopened and extended for another four to six week period.

Plaintiff's request is **DENIED**. Plaintiff has failed to provide a satisfactory reason for the lack of previous production. Defendant's demand for full production of all Treasure Island room folios at issue has been clear, unambiguous, and frequent. In addition, the Court has previously issued three equally clear and unambiguous orders compelling Plaintiff to produce, inter alia, the folios presently at issue. (See Dkt. 576 at 35-38 (summarizing Defendant's repeated requests for production and the Court's related orders, entered on April 11, 2008, June 25, 2008, and January 7, 2009)). Plaintiff has acted willfully and in bad faith in not producing timely all discovery available and related to the Treasure Island room folios, and, in so doing, Plaintiff has evidenced a pattern of inexcusable disregard for the authority of this Court and the larger civil discovery process. The fact that Plaintiff's newest counsel discovered with relative ease the existence of this failure and a readily available cure for the gap in discovery highlights Plaintiff's failure and the failure of its prior counsel in this regard. Therefore, the Court sustains the Magistrate Judge's finding that Plaintiff's failure to produce the demanded and court ordered discovery evidences a pattern of inexcusable disregard for the authority of this Court and the larger civil discovery process and warrants imposition of substantial ameliorative and punitive sanctions.

In order to craft an appropriate sanction, the Court has carefully considered the full panoply of options available to remedy Plaintiff's flagrant disregard of its discovery obligations and this Court's several orders. The Court is mindful that the sanction should not be overly harsh, but should be sufficient both to remedy the immediate prejudice suffered by the

Defendant and to serve as an example to other parties to "insure the integrity of the discovery process." Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982).

The Court first finds that dismissal of Plaintiff's entire Amended Complaint, as recommended by the Magistrate Judge, would be an excessive remedy. First, the Court finds unpersuasive Defendant's contention that Plaintiff's failure to produce the Treasure Island room folios prevented Defendant from interviewing persons who could describe the condition of the Resort and the room rented at the time of that person's stay and, thus, has unduly impeded Defendant's ability to defend against Plaintiff's claims concerning property damage to the Resort. Defendant admits that the individuals among the hurricane responders have been available to Defendant since the inception of the litigation, yet none have been interviewed, and admits that certain transient guests have been known since the early discovery in the case, yet only three have been interviewed and none have deposed pursuant to a notice or subpoena served by Defendant. Additionally, Defendant's appraisers have had access to the Property throughout the several hurricanes and photographs of the properties exist to support Defendant's defense in this regard. Second, to the degree that the Court has found deliberate misconduct, the conduct has only related to the production of folios for the Treasure Island Property. To speculate without any evidentiary support that Plaintiff's conduct in this area undermines the integrity of all discovery provided in the case is not appropriate.

The Court has also contemplated whether it is possible to allow Plaintiff's claim for business interruption losses allegedly caused to the Treasure Island Property by Hurricane Jeanne to move forward, under a sanction that Plaintiff not be allowed to rely on or to introduce any late produced Treasure Island room folios. In this proposed scenario, the

Defendant would be allowed to use the folios to proffer an advantageous fact that could not then be fully explored by Plaintiff for possible inconsistency or other weakness. This "fictional" presentation of evidence would undermine the integrity of the judicial process in a way that cannot be countenanced. This Court will not charge a jury to decide the business interruption loss claim without allowing the jury a full review of all material, probative, non-privileged evidence related to that claim.

Moreover, permitting Plaintiff to use the late produced Treasure Island folios in support of its claim for business interruption losses arising from Hurricane Jeanne would only reward it for its recalcitrance and punish the Defendant, which would be left to scramble to counter evidence newly produced on the eve of trial without reasonable explanation for the extraordinary delay. Delaying the trial to permit time to counter this evidence in an orderly fashion would penalize Defendant by increasing the litigation costs in this matter. Further, the Court must be mindful that Plaintiff, by its actions and omissions, has forced the Court to concern itself with whether the Plaintiff's conduct, if not appropriately sanctioned, would cause "'other parties to . . . feel freer than . . . Rule 37 contemplates they should feel to flout other discovery orders of other District Courts.'" Aztec Steel Co., 691 F.2d at 481 (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976)). To this point, if the only sanction ordered in such scenarios is an extension of the discovery period upon being "caught" in flagrant violation of Court orders demanding timely disclosure, such delays in compliance would be undeterred. Finally, the sanction of costs alone has been previously attempted and has failed in this case as an incentive to force proper compliance.

Thus, as the half-measure of allowing partial introduction of the room folios is

untenable, the delay in the trial and the attendant expense to the Defendant is no remedy, and cost-only sanctions have proven ineffective, the Court finds that the most appropriate remedy is to **DISMISS with prejudice** Plaintiff's claim for damages arising from or related to any alleged interruption of business at the Treasure Island Property caused by Hurricane Jeanne.

### B. Fees and Costs

The Court next finds that the amount of $75,000.00 shall serve as a reasonable amount to reimburse Defendant for expenses reasonably incurred by Defendant in pursuit of its underlying Motion for Sanctions and the full production and use of all Treasure Island room folios and to sanction Plaintiff for its violations, even though the amount may not suffice to cover all reasonable expenses incurred by Defendant. The Court reasons that the award of fees and costs in the amount of $75,000.00, in conjunction with the striking of Plaintiff's claim against Defendant for damages arising from or related to any alleged interruption of business at the Treasure Island Property caused by Hurricane Jeanne, is a sufficient sanction for the conduct at issue.

Additionally, Plaintiff, at its expense, shall produce all remaining Treasure Island room folios or other related Treasure Island guest files not yet produced to Defendant during the course of this litigation. Plaintiff shall have up to and including January 23, 2010, to make the production.

### III. Conclusion

Accordingly, for the reasons stated herein and on the Record at the December 3, 2009 Evidentiary Hearing, made upon contemplation of the parties' final oral arguments and after a careful, *de novo* review of the Record, including the record evidence admitted at the hearing

on Defendant's Motion for Sanctions, the Plaintiff's Objections to the Magistrate Judge's Reports and Recommendations, and all responses in support or objection thereto, it is hereby

**ORDERED** that those portions of the Magistrate Judge's Report and Recommendations (Dkts. 576, 578) not previously disposed of by Order dated November 16, 2009 (Dkt. 630), are **ADOPTED**, **CONFIRMED**, and **APPROVED in part** and Defendant's Motion for Sanctions (Dkt. 526) is **GRANTED in part**, as described in this Order. Specifically,

1. Plaintiff shall, within 14 days of the date of this Order, pay to Defendant the amount of $75,000.00, which shall serve as a sanction and as partial reimbursement to Defendant for expenses reasonably incurred by Defendant in pursuit of its underlying Motion for Sanctions and the full production and use of all Treasure Island room folios;

2. Plaintiff, at its expense, shall produce all remaining Treasure Island room folios or other related Treasure Island guest files (whether compiled as "folios" or kept in separate files) not yet produced to Defendant during the course of this litigation, including those that are "archived." Plaintiff shall have up to and including January 23, 2010, to make that production;

3. All claims against Defendant for damages arising from or related to any alleged interruption of business at the Treasure Island Property caused by Hurricane Jeanne are **DISMISSED with prejudice**; Plaintiff's claims for other damages, including for reimbursement of property damage allegedly caused to the Treasure Island Property by Hurricane Jeanne shall remain for trial unless dismissed by separate order of this Court; and

4. All claims against Defendant for damages alleged to have been incurred by Plaintiff for reasons other than Hurricane Jeanne's impact on the Treasure Island Property shall remain for trial unless dismissed by separate order from this Court.

**DONE and ORDERED** in Orlando, Florida, on this 5th day of January 2010.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record